JOHN E. ELZEA, RUTH H. ELZEA, IONE A. ELZEA AND LOUIS E. ELZEA, PLAINTIFFS, v. JOHN T. HAMMACK, DEFENDANT AND DIMMITT-RICKHOFF-BAYER REAL ESTATE CO., INC., A CORPORATION, DEFENDANT AND THIRD PARTY PLAINTIFF, APPELLANT, v. HARRY T. WEEKS, DAYTON F. HYDE, SULLIVAN S. MARSDEN AND JOHN T. HAMMACK, THIRD PARTY DEFENDANTS, RESPONDENTS.— 244 SW 2d 594.

St. Louis Court of Appeals.   Opinion filed December 18, 1951.

*Walter Roos, Henry C. M. Lamkin* and *Cobbs, Blake, Armstrong, Teasdale & Roos* for Appellants.

*John A. Nolan* for Respondent John T. Hammack.

*Rodney M. Fairfield, Harold S. Cook,* and *Barrett, Cook & Fairfield* for Respondents Weeks, Hyde and Marsden.

ANDERSON, J.—In this case, plaintiffs, John E. Elzea, Ruth H. Elzea, Ione A. Elzea, and Louis E. Elzea, sued defendants, John T. Hammack and the Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., a corporation, for damages for fraud and deceit in the sale of a parcel of real estate. The defendants answered, thus putting the case at issue. The defendant Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., as a part of its answer, filed a third-party petition against John T. Hammack, Harry T. Weeks, Dayton F. Hyde, and Sullivan S. Marsden, in which said third-party petition plaintiff (Dimmitt-Rickhoff-Bayer Real Estate Company, Inc.,) sought recovery over and against the third-party defendants (Hammack, Weeks, Hyde and Marsden) for whatever amount the plaintiffs (John E. Elzea, Ruth H. Elzea, Ione A. Elzea, and Louis E. Elzea) might recover against said third-party plaintiff (Dimmitt-Rickhoff-Bayer Real Estate Co., Inc.). When the case came on for trial plaintiffs, by their counsel, requested a separate trial of the issues raised by their petition, which request was granted. Said trial was had on November 12, 1949, before the court and a jury, and resulted in a verdict and judgment in favor of plaintiffs for actual damages against both defendants in the sum of $7,000, and punitive damages against John T. Hammack in the sum of $2,000. Timely motions for new trial were filed by both defendants. The motion for new trial filed by defendant Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., was by the court overruled on February 15, 1950. The transcript fails to show any ruling on the motion for new trial filed by defendant Hammack.

On February 24, 1950, upon application of defendants, the court ordered that the judgment in favor of plaintiffs and against the defendants be stayed and held in abeyance pending final disposition of the third-party petition.

On June 15, 1950, a trial was had on the issues raised by the third-party petition, and on said date the cause was taken under advisement.

On July 24, 1950, the court found the issues in favor of the third-party defendants, and on said day entered a final judgment in the cause, which recited:

"* * * that said third-party plaintiff take nothing by its cause of action herein against said third-party defendants and that said third-party defendants go hence without day and have and recover of said third-party plaintiff the costs herein incurred.

"And the court doth now on this day order and adjudge that final judgment be and is now entered in favor of plaintiffs, John E. Elzea, Ruth H. Elzea, Ione A. Elzea, and Louis E. Elzea, and against Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., a corporation, and that said plaintiffs have and recover of said Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., a corporation, the sum of Seven Thousand Dollars ($7,000.00) actual damages heretofore assessed by the jury and the further sum of Two Thousand Dollars ($2,000.00) assessed by the jury as punitive damages against said defendant John T. Hammack, and also the costs herein incurred."

On August 2, 1950, the third-party plaintiff, Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., filed a motion for new trial of the issues raised by its third-party petition.

On August 4. 1950, eleven days after the entry of final judgment, defendants John T. Hammack and Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., filed a notice of appeal to the Supreme Court of Missouri from the judgment entered in favor of plaintiffs.

The next entry in the transcript shows that on October 21, 1950, plaintiffs acknowledged satisfaction of the judgment appealed from, in consideration of the dismissal of said appeal and the payment to plaintiffs by defendant Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., of the sum of $2,500 and one-half the costs accrued, and the payment by defendant Hammack of the sum of $5,500 and one-half the accrued costs.

On the same day, October 21, 1950, the motion of third-party plaintiff, Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., for new trial of the issues raised by its third-party petition was by the court overruled. Thereafter, and on October 31, 1950, said third-party plaintiff filed its notice of appeal to this court from the judgment entered "on the 24th day of July, 1950, in favor of the third-party defendants, Harry T. Weeks, Dayton F. Hyde, Sullivan S. Marsden and John T. Hammack, and against this third-party plaintiff * * *."

The transcript further recites: "On the 18th day of December, 1950, stipulation for dismissal of appeal of John T. Hammack filed, said stipulation being as follows:" There is then set forth a stipulation captioned: "In the Supreme Court of Missouri," and signed by all the parties in which it is agreed that the appeal may be dismissed. A like stipulation with respect to the appeal of Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., also appears in the record as having been filed on the same date.

The facts material to this appeal, as they appear from admissions in the pleadings and the stipulation between the parties filed in said cause, are as follows:

During all the time hereinafter mentioned Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., was a corporation engaged in the real estate business in the City of St Louis and St. Louis County. Theodore J. Growe was vice-president and general manager of said company, and John T. Hammack was one of its salesmen, as well as its sales manager.

Prior to June 10, 1944, Sarah S. Walton was the owner of a tract of land in St. Louis County. Shortly before said date Hammack discussed with Mrs. Walton the possibility of securing a listing of said land for sale by Dimmitt-Rickhoff-Bayer Real Estate Company. Mrs. Walton refused to so list the property because she wanted to make a quick sale and did not want to be limited to the services of any one real estate company. Mrs. Walton did, however, name a figure at which she would sell the property. Hammack then suggested to Weeks, Hyde and Marsden that they join with him in the purchase of the property and gave them a plat of the property which had been given to him by the agent of Sarah Walton; and Hammack represented to them that said property fronted for at least 300 feet on Woodson Road, a concrete highway, and consisted of fifteen (15) acres more or less.

After Hammack, Weeks, Hyde and Marsden had considered the matter, and inspected the property, they agreed to purchase it—each to take a one-fourth (¼) undivided interest. The written agreement was prepared in the office of Dimmitt-Rickhoff-Bayer Real Estate Company and was executed in the presence of Mr. Growe. At that time, Weeks, Hyde, and Marsden each delivered to Dimmitt-Rickhoff-Bayer Real Estate Company his individual check in the sum of $50, payable to said real estate company as earnest money. A sale contract to purchase said land was signed on the 10th day of June, 1944, by E. O. Talbert, a straw-party nominated by Hammack, Hyde, Weeks and Marsden to hold title in their behalf. In this contract the property is described as a "tract of land in U. S. Survey 2966 and partly in section 32, township 46 north range 6 East, and being part of lot one of Walton Estate and containing 15.83 acres and subdivision being in the County of St. Louis, Missouri. Woodson rd." The total sale price agreed to was $3,500. It was further agreed that the property was to be conveyed subject to a $1,000 deed of trust. Mrs. Walton signed the contract on June 16, 1944.

On July 31, 1944, Weeks, Hyde and Marsden met Hammack at the office of Dimmitt-Rickhoff-Bayer Real Estate Company for the purpose of consummating the sale. Mr. Growe handled the closing of the contract. Title was taken in the name of E. O. Talbert, a straw-party agreed upon by said purchasers. Mr. Growe prepared and furnished Weeks, Hyde and Marsden with a "Sale Statement." Thereupon, Weeks, Hyde, Marsden and Hammack each gave Growe his check for $573.50, payable to the real estate company, each receiving a receipt which acknowledged receipt of said amount "representing one-fourth (¼) of the amount due from E. O. Talbert for the purchase of a tract

of land in U. S. Survey 2966 and partly in Section 32, Township 46 North, Range 6 East, being part of Lot or Share 1 of Walton Estate Subdivision, formerly owned by Sarah S. Walton and comprising 15.583 acres, exclusive of Woodson Road or 15.693 acres including the portion lying within Woodson Road."

A warranty deed subject to the said $1,000 deed of trust from E. O. Talbert to Hammack, Hyde, Weeks and Marsden was then prepared. This deed was never recorded. A receipt for this deed for E. O. Talbert was then prepared and signed by the real estate company and delivered to Weeks, Hyde and Marsden. By said instrument, said company agreed that said deed would be "held in escrow by us pending further written instructions from each of the Grantees or their legal representatives authorizing further disposition of the Deed." The receipt was signed, "Dimmitt-Rickhoff-Bayer R.E. Co., Inc., (Escrow Agent) by Theo. J. Growe, Vice-President."

Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., received a commission for its services in connection with the sale of said property to Hammack, Hyde, Marsden and Weeks. This commission amounted to $175. Hammack received one-half of this amount as his share of the commission.

On June 19, 1944, Hammack, Weeks, Hyde, and Marsden, through their straw-party, E. O. Talbert, listed the property for sale with Dimmitt-Rickhoff-Bayer Real Estate Company, Inc. The listing agreement was in writing, signed by Talbert, and recited:

"I hereby appoint DIMMITT-RICKHOFF-BAYER R.E.CO., Inc., as my exclusive agent to sell the following described Real Estate, situated in the County of St. Louis, Mo., on the terms and conditions hereinafter named:
Street and No.   Woodson rd

| Improvements | vacant |
| --- | --- |

Price   $9,000   1st Deed of Trust 1,000."
The terms with respect to the agent's commission were then set out in the contract, together with a provision that the listing would remain in force for 90 days. Appearing under "Remarks" was the notation, "North of Olive St. rd. west side of Woodson 1034 ft deep."

The property was not sold within the 90 days provided in said listing contract and, on March 2, 1946, a new listing contract was entered into, to remain in force for 30 days. The terms of this contract were similar in all respects to the previous contract except that the sale price was designated at $12,500, and it contained a notation that the property was "clear." Under "remarks" appeared: "North of Olive St. rd west side of Woodson 1034 deed (see sign)."

Dimmitt-Rickhoff-Bayer Real Estate Company caused a wooden sign to be placed directly east of the property sold to Weeks, Hyde, Marsden

and Hammack, between said property and Woodson Road, and on the east side of old Woodson Road, and not on any property ever owned by Mrs. Walton. Said sign advertised the property for sale in the name of Dimmitt-Rickhoff-Bayer Real Estate Co., Inc. The location of the sign was fixed by Hammack.

In the summer of 1946 a Miss Westrich suggested to Hammack that the sign may have been improperly placed on ground owned by an estate in which she was interested and which Dimmitt-Rickhoff-Bayer Real Estate Company was not authorized to sell, but that she was not certain as to the exact line of the property of the estate. She agreed with Hammack to check the location of the lot to which she referred and then call Hammack. Miss Westrich never called Hammack. Hammack did not inform anyone of this information received by him.

In July, 1946, the plaintiffs agreed to buy this property. A contract of sale was signed by plaintiff John Elzea, presumably acting for himself and the other plaintiffs, on July 29, 1946, and accepted by E. O. Talbert, straw-party, for the owners, on July 30, 1946. In said contract the property was described as "A tract of land in U. S. Survey 2966 and partly in Section 32 Township 46 North, Range 6 East, and being part of Lot or Share 1 of WALTON ESTATE SUBDIVISION. Having a frontage of 320 feet on the west side of Woodson Road and containing 15-½ acres." The sale price designated was $10,000 cash. It was further agreed that the sellers were to pay Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., the commission as provided under the rules of the St. Louis Real Estate Exchange.

This sale was consummated on August 9, 1946, in the office of Dimmitt-Rickhoff-Bayer Real Estate Company. The property at said time was conveyed to plaintiffs by warranty deed. Theodore J. Growe acted on behalf of the real estate company. John T. Hammack, who had given the Elzeas a copy of the plat furnished by the agent of Mrs. Walton, and who had told the Elzeas where the land was located, was present at the time. The defendants Weeks, Hyde and Marsden did not meet or communicate in any manner with any of the Elzeas prior to the completion of the sale of the property to the Elzeas.

At the time of the consummation of the sale Mr. Growe noticed a discrepancy between the description contained in the contract of sale and the description contained in a certificate of title procured from the Land Title Insurance Company in St. Louis. Mr. Growe called this to the attention of the Elzeas and a supplement to the sale contract was prepared by Growe and executed by the Elzeas showing the true description of said land. It provided:

"The legal description of said property as described in said contract is hereby changed to read:

"A tract of land in U. S. Survey 2966 and partly in Section 32, Township 46 North, Range 6 East, and being part of Lot or Share 1 of WALTON ESTATE SUBDIVISION, and more particularly

described as follows, to-wit: (There then follows a description of the property in metes and bounds) * * * containing 15.693 acres including ½ of old Woodson Road, and 15.583 acres excluding said road, * * *''

The deed from Talbert to the Elzeas contained a proper description of the property.

Neither Weeks, Hyde nor Marsden saw the above mentioned supplemental agreement or knew of its existence prior to the completion of the sale to the Elzeas. The only representations made at any time as to the location of the property in question were made orally by Hammack, and by Hammack's placing of the sign above referred to, and in the plat above mentioned.

Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., received a commission of $500 for its services in connection with the sale from Talbert to the Elzeas. Acting under its agreement with Hammack, the Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., paid Hammack $250 as the salesman's proportion of said commission, and an additional sum of $25 as the sale manager's proportion of said commission. The balance, $225, retained by Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., has been paid into the registry of the court.

It was also stipulated that all pleadings, instructions and verdict in plaintiffs' suit against defendants might be considered in evidence. The pleadings are quite lengthy, but we will attempt to summarize them briefly.

In plaintiffs' petition it was alleged, in substance, that plaintiffs observed the tract of land upon which the ''For Sale'' sign was erected, which land was enclosed by a wire fence and fronted on Woodson Road; that defendants fraudulently professed to represent the owner of said land; that said owner was willing to sell the land for $10,000; that E. O. Talbert was the owner; that it fronted 320 feet on Woodson Road and consisted of fifteen and one-half acres, as shown by a drawing thereof which defendants prepared and delivered to plaintiffs.

It was then alleged that plaintiffs entered into a written agreement to purchase a tract of land which was fraudulently represented by defendants to be the same land enclosed by the wire fence, described in the drawing, and upon which the ''For Sale'' sign was erected; that said sale was consummated on August 8, 1946, at which time Theodore J. Growe, Vice-President of defendant real estate company, officiated and assured plaintiffs that they had purchased the tract of land theretofore displayed to them by the drawing and physical inspection. It was further alleged that thereafter plaintiffs began construction of a house upon the land, and so nearly completed same as to be able to move into said house and commence to dwell therein; that on or about October 10, 1946, plaintiffs were notified by the Giers Improvement Corporation that the home nearly completed was erected on its property, and upon investigation it was determined that plain-

tiffs' home had been constructed on the property of the Giers Improvement Corporation.

It was futher alleged that, by agreement with the Giers Improvement Corporation, plaintiffs were authorized to remove their house from the premises provided plaintiffs would, before May 1, 1947, pay said company $195, remove a wooden fence they had constructed, restore the original wire fence, and make the ground level where the house had been removed; that plaintiffs complied with said agreement and removed their house from said land within the specified time.

· It was then alleged that the land described in their deed was a tract located north of the property of the Giers Improvement Corporation; that it was not the tract enclosed by the wire fence and described in defendants' drawing and designated by the defendants during the physical inspection; that the property described in the warranty deed did not have a frontage of 320 feet on Woodson Road; that said land owned by Talbert was, on August 8, 1946, reasonably worth the sum of only $4,500, and that plaintiffs had been damaged in the sum of $5,500 on account of the difference in values of said tracts of land.

It was further alleged that defendants knew that the land upon which the "For Sale" sign was erected was the property of Giers Improvement Corporation; that defendants knew that plaintiffs desired to purchase said property; that defendants knew that the property owned by Talbert did not have a frontage on Woodson Road, and that plaintiffs were not interested in and would not purchase the property owned by Talbert unless his land was the tract fronting on Woodson Road enclosed by the wire fence, described in defendants' drawing, and designated and pointed out by the defendants during the physical inspection thereof.

It was further alleged that plaintiffs relied upon said representation made by the defendants in entering into the agreement of purchase and, in good faith, took possession of said property fronting 320 feet on Woodson Road, and commenced the construction of their home thereon.

The petition then set out in detail the costs of moving plaintiffs' house to the adjoining property and the cost of restoring the property of the Giers Improvement Corporation in accordance with the terms of their agreement with said company, which cost was in the sum of $4,183.25.

It was then alleged that plaintiffs were greatly inconvenienced and discommoded on account of the construction of their home and the dismantling and removal thereof, and were caused to suffer further inconvenience and discomfort because of the reconstruction of their home on the property described in the warranty deed, which said dismantled home was not planned and designed for the physical characteristics of said property so described; that plaintiffs were entitled to an award of punitive damages as a punishment to defendants

for their willful, deliberate, wanton, malicious, improper and wrongful acts. The prayer of the petition was for $15,000 actual damages and $25,000 punitive damages.

The main defense interposed by the defendant Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., was a denial that John T. Hammack was at all times its agent, as alleged in plaintiffs' petition, and that it fraudulently made any representations to plaintiffs. It was averred that its Vice-President, Theodore J. Growe, did officiate at the closing of the sale and at said time directed plaintiffs' attention specifically to a discrepancy between the description of the land contained in the agreement of sale and the description in the warranty deed by which title was conveyed from E. O. Talbert to plaintiffs, and that Growe suggested the plaintiffs have a survey made of the land to determine exactly what they were purchasing before they went forward with the sale; that plaintiffs failed to heed the suggestion and proceeded to consummate the sale and thereby voluntarily assumed any risk in connection therewith; that after the said Growe had called the plaintiffs' attention to the discrepancy between the descriptions contained in the two instruments, the plaintiffs were put on notice as to a possible difference existing between the land they were purchasing and the land which they alleged they thought they were purchasing, and hence waived any right to rely upon any representation made.

The answer also averred that Hammack, while ostensibly acting for the real estate company in securing a listing of the property from E. O. Talbert, was in fact acting on behalf of himself and the said Harry T. Weeks, Dayton F. Hyde, and Sullivan S. Marsden; that all the knowledge or information which said real estate company had concerning the location of said property was information obtained from said Hammack, who, with his three associates, was the real owner of said property at the time of the transfer of same to plaintiffs; that said defendant believed in truth and in fact that the property described by Hammack was the property the plaintiffs claimed they had intended to purchase and believed they were purchasing, since all of said defendant's information concerning the true location and description of said property was obtained by it from defendant Hammack, one of the owners and agent for the other owners of the property, and the procurer of the original listing of said property from the said Walton; that the said Hammack was at all times acting, not as the agent of said defendant, but as an individual and in his own interest, and in the interest of his associates; that acts done or representations made by said Hammack were made on his own behalf and on behalf of his associates.

It was further averred in said answer that said defendant received as a share of the commissions on the sale of said property to plaintiffs the sum of $225; that it disclaimed any authorization for or ratification of any false or fraudulent misrepresentations intended to deceive

or defraud plaintiffs, if any were made, and as proof of such disclaimer and refusal to ratify, tendered into the registry of the court the sum of $225, payment received, to abide the judgment of the court.

In his answer, defendant John T. Hammack denied the fraud charged by plaintiffs in their petition. It was then averred that prior to August 9, 1946, and after plaintiff John E. Elzea had obtained a certificate of title on the land referred to in the earnest money contract, the attention of said John E. Elzea was called to a discrepancy in the description of the land as described in the earnest money contract and in the certificate of title, and it was suggested to said John E. Elzea that a survey be made of said land before the purchase thereof was consummated, but that said John E. Elzea refused to have a survey made, and agreed to have the earnest money contract amended so as to make the description of said land therein conform to the description contained in the certificate of title, which amendment was made; that said contract, as amended, was approved by the said John E. Elzea, and the purchase thereafter consummated; that plaintiffs were put on notice concerning the exact location of the land which they proposed to purchase and accepted and approved the change and amendment in the earnest money contract with full knowledge of the true description thereof, and expressly waived any right to rely upon any representations made by said defendant or anyone else; that plaintiffs received a conveyance of the precise property which they contracted to purchase and are by reason thereof completely estopped to claim damages by virtue of any representations made concerning the boundaries of said tract by anyone prior to August 9, 1946, for the reason that the earnest money contract, as amended, furnished plaintiffs with actual knowledge of the land they were purchasing.

In plaintiffs' instructions the liability of defendant Hammack was predicated on a finding by the jury that said defendant knowingly and falsely represented to plaintiffs that the Walton land fronted 320 feet on the west side of Woodson Road. By said instructions, the liability of defendant Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., was predicated on a finding that said false representation was made by Hammack while acting as agent for said real estate company.

The measure of damage instruction authorized a recovery of actual damages in an amount equal to the difference between the reasonable market value of the land which plaintiffs actually received and the reasonable market value of the land had it actually fronted on Woodson Road.

At plaintiffs' request, the jury were also instructed that they might award exemplary or punitive damages if they found that said false representation, if any, was made wilfully, maliciously, and recklessly, in wanton disregard of the rights of plaintiffs.

By Instruction No. 7, the jury were instructed that if Theodore Growe called the attention of plaintiff Elzea to the fact that the land

described in the warranty deed from Talbert to Elzea and the land described in the certificate of title differed from the description set out in the earnest money contract, and that the said Growe, with plaintiff Elzea's consent, drew up a supplementary contract, changing the description of the land from that contained in the original contract of sale so that it would conform to the description contained in the warranty deed and the certificate of title, and that Growe suggested to plaintiff Elzea that he should obtain a survey of the property before closing the sale, but that Elzea consummated the sale without so doing, then plaintiffs assumed the risk of purchasing a tract of land other than that which they desired to purchase and the verdict should be for defendants.

By Instruction No. 9, the jury were instructed that if they found that the only knowledge of defendant Dimmitt-Rickhoff-Bayer Real Estate Company of the location of the land, or that the only representation made by defendant Dimmitt-Rickhoff-Bayer Real Estate Company, its agents or employees, were representations based upon what said defendant Dimmitt-Rickhoff-Bayer Real Estate Company or its agents and employees had been told by the owner or part owner of the land, who represented to the defendant Dimmitt-Rickhoff-Bayer Real Estate Company that he knew the boundaries of said land, and that the information or representations so made were believed to be true, then the verdict should be for the defendant Dimmitt-Rickhoff-Bayer Real Estate Company.

By Instruction No. 10, the jury were instructed that if they found that defendant Dimmitt-Rickhoff-Bayer Real Estate Company was without any knowledge of the location of the land in question, and that said defendant, its servants, agents or employees, made no representations to plaintiffs as to the location of said land, but that all such representations were made by defendant Hammack, and that Hammack, as part owner, in making said representations, was acting solely in his own interest, then their verdict should be for defendant Dimmitt-Rickhoff-Bayer Real Estate Company.

By Instruction No. 11, the jury were instructed that before defendant Dimmitt-Rickhoff-Bayer Real Estate Company could be held liable solely on the ground that Hammack was acting as its agent, the jury must find that Hammack made the representations while acting in his capacity as agent for Dimmitt-Rickhoff-Bayer Real Estate Company; that if they found that Hammack was acting at all times in his own behalf, and in behalf of Marsden, Weeks and Hyde, he could not be acting in behalf of defendant Dimmitt-Rickhoff-Bayer Real Estate Company.

For defendant Hammack, the jury were instructed that if they found that prior to the sale to plaintiffs, John E. Elzea obtained information concerning the true boundaries of the property, their verdict should be for defendant Hammack.

The jury were further charged in several instructions that if they found that the representations, if any, made by Hammack, were made in good faith in the belief they were true, and that said Hammack had no purpose or intent to deceive, then plaintiffs were not entitled to recover against defendant Hammack.

The court, by an instruction, withdrew from the jury's consideration all evidence introduced relating to any house, buildings, or other improvements erected on said land, and charged the jury to disregard said evidence.

The theory of the third-party petition was that the third-party defendants were primarily liable for the tort of Hammack; that Hammack, in making the representations in question, was not acting as agent for the third-party plaintiff, but was acting for himself as part owner of the land, and on behalf of his co-owners, Hyde, Weeks, and Marsden.

The theory of defense interposed by defendant Hammack in his answer was that Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., was put on notice as to the true location of the property by the knowledge acquired by its vice-president, Theodore J. Growe, of the discrepancy between the description of the land in the contract of sale and the description in the certificate of title, and hence were in pari delicto with said Hammack. By said answer, defendant Hammack also disclaimed any knowledge as to the true boundaries of the property.

The answers of Hyde, Marsden and Weeks, after admitting their residence in St. Louis County, and the filing of the plaintiff's action, denied each and every other allegation of said third-party petition.

Respondents Weeks, Hyde and Marsden have filed a joint motion to dismiss the appeal on the ground that jurisdiction thereof is properly in the Supreme Court. If such were the fact, we would not be warranted in dismissing the appeal, but, under Section 11 of Article V of the Constitution, would be compelled to transfer the cause to the Supreme Court. We have inquired into our jurisdiction of this case and are satisfied that the appeal to this court was proper. The motion to dismiss is accordingly overruled.

Respondent Hammack contends that he was not properly made a third-party defendant for the reason that Section 507.080, R. S. Mo. 1949, by its terms, provides only for the filing of third-party petitions against persons not a party to the suit. No such question of misjoinder was raised in the trial court.

Section 509.460, R. S. Mo. 1949, authorizes cross-claims by one party against another, and that: ''Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.''

It appears, therefore, that Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., had a right under the Code to assert its claim against

Hammack in a cross-claim under the foregoing section. But, instead, it incorporated its cross-claim in the cross-petition, filed under Section 507.080, R. S. Mo. 1949, against Weeks, Hyde and Marsden. Appellant's pleading, therefore, as to Hammack was a cross-claim under Section 509.460, supra; and, as to Weeks, Hyde and Marsden, appellant's pleading was a cross-petition under Section 507.080, supra. We see no objection to the joining of all claims in one pleading. Hence, there is no merit to the point made.

Appellant, Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., assigns as error the refusal of the trial court to render judgment against the third-party defendant Hammack for the amount paid by appellant in satisfaction of the judgment rendered against it in the Elzeas' suit. It appears from the record that Dimmitt-Rickhoff-Bayer Real Estate Company was held liable to plaintiffs for the acts of Hammack on the theory of respondeat superior. It also appears from the facts stipulated in the instant suit that Hammack, at the time he committed the tort, was acting in the scope of his employment as agent of the third-party plaintiff.

It is well established that an agent or employee is liable to his principal or master for damages which the latter is compelled to pay to third persons solely because of the wrongful act of the agent or employee. State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S. W. 2d 481; 42 C. J. S., Indemnity, section 21, page 597; 27 Am. Jur., Indemnity, section 19, page 468.

But respondent Hammack contends that the above mentioned principle is not applicable in the case at bar; that the verdict of the jury in the Elzeas' case has established that each defendant contributed to cause plaintiffs' injury, which verdict is binding on the parties to this action. It is urged in support of this contention that the jury found against Hammack because of his own representations and, under Instruction 9, 10 and 11, found against defendant Dimmitt-Rickhoff-Bayer Real Estate Company because of the fraud of Growe in closing the deal after having been put on notice as to the true location of the property. This contention cannot be sustained. It is clear from the record that as between plaintiffs and defendant Dimmitt-Rickhoff-Bayer Real Estate Company, the issue tried was whether said defendant was liable on account of false representations made by Hammack. The liability of said defendant (Dimmitt-Rickhoff-Bayer Real Estate Company), by reason of the alleged fraud of Growe, was not submitted to the jury, either by plaintiffs in their instructions, or by instructions 9, 10 and 11 given at the request of defendant real estate company.

Under section 507.080, R. S. Mo. 1949, Hammack is bound by the adjudication of the third-party plaintiff's liability to the plaintiffs Elzea. The trial court erred in failing to enter judgment in appellant's

favor against Hammack for the amount paid by appellant to satisfy the judgment against it.

It is next urged that appellant is entitled to a judgment against respondents Weeks, Hyde and Marsden on the theory that said respondents, being engaged with Hammack in a joint adventure, are personally liable for the tort of Hammack acting in furtherance of the joint undertaking, although they had no knowledge of the wrongful act and did not personally participate in it.

It is not necessary for us to decide whether respondents were engaged in a joint adventure or were merely tenants in common. In either event, Hammack, in promoting the sale of the land in question, was acting for himself and as agent for his three associates. 48 C.J.S., section 14, page 870; 68 C.J.S., section 136, page 571; Arado v. Keitel, 353 Mo. 223, 182 S. W. 2d 176. And any legal responsibility on the part of Hammack's three associates for the fraud committed by Hammack in the sale to plaintiffs of the land in question is a vicarious liability.

Hammack was also agent for Dimmitt-Rickhoff-Bayer Real Estate Company. This, in our judgment, is conclusively shown by the facts in evidence in the instant suit and adjudicated in the Elzea suit.

It also appears that there was no personal fault on the part of Weeks, Hyde and Marsden for the fraud committed on plaintiffs by respondent Hammack. Appellant is likewise free from fault. Appellant's liability to plaintiffs was also constructive, based upon the doctrine of respondeat superior. Under such circumstances, is there any right to indemnity in either appellant or respondents Weeks, Hyde and Marsden? The answer to this question is to be worked out by applying the following principle announced in 42 C.J.S., section 27, page 604:

"the right of a person exposed to liability and compelled to pay damages on account of the negligent or tortious act of another to indemnity from the latter, considered supra, sec. 21, does not apply where both parties are joint tort-feasors, or are in pari delicto, as where the act of each of the parties contributed to cause the injury, at least, where the fault of each is of equal grade and similar character, and particularly where the negligent or wrongful act from which damages result to a third person is committed by the parties acting in concert, or legally held to have acted in concert."

As heretofore stated, appellant bases its right to indemnity solely upon the vicarious character of the responsibility of Weeks, Hyde and Marsden, and not upon the personal fault of these parties. In our opinion, this is not sufficient grounds upon which to base recovery of indemnity. A recovery might be had for contribution, upon such a showing, had Weeks, Hyde and Marsden been made parties to plaintiffs' suit, and had a joint judgment been rendered against them and

appellant. Restatement of the Law, Restitution, Chapter 3, section 99, page 426. But to authorize recovery of indemnity there must be a primary responsibility for the tort on the part of the person held. Restatement of Law, Restitution, Chapter 3, section 98, page 422. This primary responsibility is not shown to rest upon respondents Weeks, Hyde and Marsden in the case at bar. Rather, it is shown that their responsibility and that of appellant was of equal grade and similar character. The court did not err in finding for respondents Weeks, Hyde and Marsden.

The judgment appealed from is reversed and the cause remanded with directions to the trial court to enter a new judgment in favor of the third-party defendants Harry T. Weeks, Dayton F. Hyde, and Sullivan S. Marsden, and in favor of the third-party plaintiff, Dimmitt-Rickhoff-Bayer Real Estate Co., Inc., and against the third-party defendant John T. Hammack in the sum of $2,500, plus whatever amount said third-party plaintiff has paid to plaintiffs John E. Elzea, Ruth H. Elzea, Ione A. Elzea, and Louis E. Elzea to satisfy the judgment for costs rendered against it and in favor of said plaintiffs in the suit of John E. Elzea, Ruth H. Elzea, Ione A. Elzea and Louis E. Elzea, plaintiffs, v. John T. Hammack and Dimmitt-Rickhoff-Bayer Real Estate Company, Inc., defendants, and for the costs of this action. *Bennick, P. J.,* and *Holman, J., concur.*