Mayma CROUCH, Plaintiff,

v.

Dale TOURTELOT, Administrator of the Estate of J. S. Brown, deceased, Defendant-Appellant,

Virgil H. Crouch, Defendant-Respondent.

No. 47971.

Supreme Court of Missouri,

En Banc.

Nov. 13, 1961.

William H. Burden, Joplin, for appellant.

Robert E. Seiler, Joplin, Seiler, Blanchard & Van Fleet, Joplin, of counsel, for respondent.

EAGER, Judge.

This is an appeal from the dismissal of a third-party petition, the order being designated as a final judgment. See Rule 82.06, V.A.M.R. The case arises from an automobile collision occurring in Jasper County on September 25, 1955. We find it necessary to digest the pleadings generally. The original plaintiff, Mayma Crouch, sued the Administrator of J. S. Brown as sole defendant and alleged: that she was a passenger in her husband's car proceeding northerly on Highway 66; that it had collided with another car proceeding ahead of theirs in the same direction, after which her husband had stopped and alighted, leaving his car on the pavement, headed east; that decedent Brown, driving southerly on the highway collided violently with the car in which plaintiff was still seated, due to negligence on his part as alleged in six specified grounds; these were: excessive speed, failing to maintain a vigilant lookout, failure to keep his car properly under control, failure to keep his car as near as practicable to the right hand edge of the pavement, failure to stop, slacken or change course, and running into collision with plaintiff's husband's car when it was stopped in plain view. Plaintiff further alleged that she suffered serious and permanent injuries which "were directly and proximately caused by the negligent and carelessness" of Brown. She prayed damages of $25,000. Defendant filed an answer in which he denied the substantive allegations of the petition and alleged contributory negligence on plaintiff's part and sole negligence on the part of her husband; he also alleged the existence of a joint undertaking and the applicability of the doctrine of imputed negligence.

Thereafter the defendant filed by leave of court his third-party petition (and amended petition) against Virgil H. Crouch, plaintiff's husband, under § 507.080, RSMo 1949, V.A.M.S.[1] The record does not show notice to plaintiff but no objection is made on that score. Therein defendant referred to plaintiff's amended petition and attached a copy thereof as "Exhibit A"; this made plaintiff's amended petition "for all purposes" a part of the third-party petition. Rule 55.14. Hereafter, for clarity, we shall sometimes refer to the third-party defendant as "Crouch," and to the third-party plaintiff as "Brown" (though actually the latter is Brown's Administrator); the parties have occasionally confused the technical designations, and we merely seek to simplify the continual references. The third-party plaintiff alleged (omitting uncontroverted allegations): that Crouch had collided with the rear of another car proceeding northeasterly on Highway 66 ahead of his; that this occurred after lights were required; that Crouch's right front headlight was damaged so that it would not burn, but that his car was "operable"; that Crouch alighted but left his car standing in the "left hand lane" of the pavement at the

---

1. Statutory references will be to this revision, as well as to the newly issued RSMo 1959.

intersection of a black-topped road and just south of a curve in Highway 66; that Brown, several minutes later, came around this curve, driving southwesterly and, "blinded by the lights from approaching traffic," collided with the front end of Crouch's car in which plaintiff was still seated; that the collision was "directly and proximately caused and occasioned solely" by the negligence of Crouch in that: he created a "dangerous condition on the highway" by leaving his car unattended in the west lane of the traveled portion of the highway for several minutes, without proper lighting or other warning, and thus obstructed free passage thereon; he knew or should have known of the heavy travel and that lights on other cars might blind approaching motorists or that the one light remaining on his car might mislead approaching drivers; and he negligently failed to drive his car onto the shoulder or onto a black-topped road located nearby. Brown further alleged: that by reason of the collision with the stopped vehicle "and the mere fact of said collision while plaintiff was seated therein the allegations of said collision in plaintiff's petition stated a cause of action against third-party plaintiff's decedent and compelled the defendant and third-party plaintiff to defend said action" despite the fact that as between Brown and Crouch the collision was caused solely by the negligence of Crouch; that Brown's liability, if any, was "passive, secondary or constructive and is based on the mere fact that collision occurred * * * and is not based upon any direct, primary or active negligence" of Brown, who had the right to assume that the highway would be free of "obstructions or dangerous conditions"; that Brown was therefore entitled to be indemnified by Crouch for any and all liability or damages that he might sustain in defending plaintiff's action, plus his expenses, and he prayed judgment over against Crouch therefor.

Crouch, as the third-party defendant, filed his motion to dismiss the third-party petition (and amended petition) for the

reasons: that it failed to state a claim upon which relief could be granted; that plaintiff could not legally amend her petition so as to accept Crouch as a defendant because of the husband-wife relationship; that defendant should not be permitted to hold the husband indirectly responsible on a liability for which he, the husband, would not be directly responsible to plaintiff; that no relationship was alleged between Crouch and Brown which would create a liability on the latter for Crouch's acts; that no facts were alleged to show that Brown's liability was derivative or constructive; that on defendant's own allegations Brown and Crouch if the latter was liable at all, were joint tort-feasors, and that the only basis of any liability of the defendant to the plaintiff would be negligence on Brown's part as alleged in the original petition.

As already indicated, the court sustained the motion to dismiss the third-party petition and entered a final judgment of dismissal. While it is immaterial to the present issues, we note that Brown apparently died sometime later from injuries sustained in the collision.

The parties have raised no question of our jurisdiction, but that question was suggested at the oral argument. More specifically, counsel for appellant was asked whether the amount claimed in the third-party petition did not rest upon a contingency, namely, the uncertain amount which plaintiff might eventually recover from the original defendant, if anything. We have concluded that we do have jurisdiction of the appeal. It is true, of course, that the jurisdiction of this court must affirmatively appear from the record, without speculation or contingency. Missouri Managerial Corp. v. Pasqualino, Mo.App., 323 S.W.2d 244, 247; Cotton v. Iowa Mutual Liability Insurance Co., 363 Mo. 400, 251 S.W.2d 246, 248; Kansas City v. National Engineering & Mfg. Co., Mo., 265 S.W.2d 384, 385; National Surety Corp. v. Burger's Estate, Mo., 183 S.W.2d 93, 95; In re Jackson's Will, Mo.App., 291 S.W.2d

214, 218. But we have also held in many cases that where plaintiff has been finally defeated on the pleadings or by adverse judgment, the amount which he has bona fide claimed in his petition fixes our jurisdiction as the "amount in dispute" under Section 3, Article 5, Constitution of Missouri, 1945, V.A.M.S. Burroughs v. Lasswell, 336 Mo. 463, 79 S.W.2d 107; Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W. 2d 615; Nydegger v. Mason, Mo., 315 S.W. 2d 816; Page v. Laclede Gas Light Co., Mo., 245 S.W.2d 23; Burke v. Pappas, 316 Mo. 1235, 293 S.W. 142; Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763. In fact this rule has become so general that in recent years there has been little discussion in the opinions which have applied it. This court does reserve the right to examine the entire record in order to ascertain if a jurisdictional amount has been improperly or fictitiously alleged. Strothkamp v. St. John's Community Bank, Inc., Mo., 329 S. W.2d 718; Daly v. Schaefer, Mo.App., 331 S.W.2d 150; Buddon Realty Co. v. Wallace, Mo., 188 S.W.2d 28, 29. There are no facts of record here to detract from the jurisdictional averments of the pleadings and the plaintiff has specifically alleged very substantial injuries. This case differs from the ordinary one in that the appellant is a third-party plaintiff, and the original plaintiff's claim has not been adjudicated adversely. However, the third-party plaintiff's claim has been so adjudicated and, absent any fact of record which indicates the contrary, we hold that the amount claimed in good faith by plaintiff from defendant, for which the defendant here seeks full indemnity, fixes the amount in dispute for the purpose of our jurisdiction.

■ Since the case of State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S.W. 2d 127, it has been universally recognized that when a third-party petition is filed the acceptance of the third party as a defendant is optional with the plaintiff; if he accepts that party he should amend his petition, so indicating. See also: State ex rel. and to Use of Merino v. Rose, 362 Mo.

181, 240 S.W.2d 705. There has been no such acceptance here, and Crouch says that the original plaintiff could not proceed against him because of the husband-wife relationship, citing Brawner v. Brawner, Mo., 327 S.W.2d 808. He also urges that the court may not require the doing indirectly of what plaintiff may not do directly. In our view of the case we shall not reach that question.

■ This third-party claim is not one for contribution, but for *indemnity* in toto. Contribution is not permitted between tortfeasors in Missouri except after a joint judgment. State ex rel. McClure v. Dinwiddie, supra; Farrell v. Kingshighway Bridge Co., Mo.App., 117 S.W.2d 693; Section 537.060. The theory of the third-party claim here is to exclude the operation of this principle by laying all negligence at the door of Crouch,—for leaving his car on the highway, in Brown's path, without sufficient lights or other warning,—and to recover full indemnity. Brown thus seeks to disclaim all negligence by alleging that he had just come around a curve, that he was blinded by approaching lights, and that he had the right to assume that the road was clear. Ordinarily the existence of negligence on the part of one who drives into a stopped vehicle on the highway is a question of fact, unless the circumstances establish his negligence as a matter of law. Thompson v. Byers Transportation Co., 362 Mo. 42, 239 S.W.2d 498; Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95. And before proceeding further we note again that Brown attached a copy of the amended petition of plaintiff to his amended third-party petition as an exhibit; the exhibit thus became a part of his third-party petition for all purposes. Section 509.130. The plaintiff alleged six grounds of specific primary negligence on the part of Brown, including excessive speed, failure to maintain a vigilant lookout, failure to keep his car under control, failure to keep his car as near as practicable to the right hand edge, failure to stop, slacken or change course, and running into a stop-

ped car in plain view; she further alleged that Brown's negligent acts were the direct and proximate cause of her injuries. We may not ignore that petition.

There is considerable divergence and some confusion in the authorities, generally, as to the circumstances under which indemnity may be required for a liability arising in tort. We shall confine our discussion largely to the Missouri cases. In McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W. 2d 788, 793, the question was considered at some length. A painter had been injured by coming into contact with a highly charged electric wire, while painting the structural roof supports of plaintiff's plant. He was an employee of the defendant-independent contractor; the latter had been shown the hazards in detail, and had agreed to warn its employees accordingly and to take all necessary precautions. The injured man collected compensation under the Missouri Workmen's Compensation Act, Section 287.010 et seq. RSMo 1949, V.A.M.S., and then sued McDonnell; after judgment, McDonnell settled with him for $32,100, and proceeded against the contractor on a third-party petition. It was held that this petition stated a cause of action. Inherent in that situation was, (a) the owner-independent contractor relationship, and (b) the contractor's express agreement to protect against this hazard. The court recognized the necessity of a duty owed by the indemnitor to the indemnitee; it held that the duty there arose by virtue of the express agreement of the contractor to protect against the known hazards and that he had negligently failed to perform. It was further recognized that ordinarily the right to indemnity arises in connection with such relationships as principal and agent, municipal corporation and property owner, and in other instances where there is a secondary liability on the part of the one seeking indemnity, his liability being one " 'solely by imputation of law because of his relation to the actual wrongdoer, * * *' " (citing Prosser, 250, § 46).

In State ex rel. Siegel v. McLaughlin, Mo.App., 315 S.W.2d 499, a street car passenger was injured when the street car collided with an automobile. The passenger sued the Public Service Company, the operator of the street car and the motorist, Siegel. The company filed a cross-claim against Siegel on the theory that it was only liable to plaintiff for "inferred" negligence under the res ipsa doctrine, that Siegel was charged with knowledge of its liability on that theory, and that, as between the defendants, all actual causative negligence was that of Siegel. The company further alleged that its liability, if any, was derivative or constructive and was based upon the carrier-passenger relationship; it prayed for a judgment over against Siegel for all liability which might be adjudged against it in the action. The trial court overruled Siegel's motion to dismiss the cross-claim and proceedings in prohibition were instituted. The Court of Appeals held that on the pleadings no liability was stated as between the defendants; therein it considered both the petition and the cross-claim. The court said in part, loc. cit. 502: "The area in which a party held liable for negligence may secure indemnity from another party also negligent is closely circumscribed. It embraces a group of special situations and relationships where it has seemed reasonable and desirable to impose the ultimate responsibility on the person found to have played the active or primary role in the negligent situation in favor of one also held liable, but whose part in the event is passive or secondary. In such situations the parties are said not to be in pari delicto." The court then recited instances of such liability, as in suits between a landlord and tenant, a city and a property owner, and a principal and his agent, in which the latter (in each case) had by his own act created the dangerous condition or caused the harm. The court held that the Public Service Company was charged with active and concurrent negligence, although pleaded as a res ipsa case, which negligence was alleged to have been a proximate cause of the collision; and that

if the company was held liable, its liability would result because of its own negligence and not by reason of any negligence of Siegel's. It concluded that under these facts no right to indemnity existed. On motion for rehearing the court said (quoting) at loc. cit. 507: "'Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tort-feasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.'" The court declined to base its decision upon "a consideration of the disproportionate duties owed by one tortfeasor to the other, where both have breached substantially equal duties owed the injured person * * *."

In State ex rel. and to Use of Merino v. Rose, 362 Mo. 181, 240 S.W.2d 705, the allegations of the third-party petition of a defendant motorist were held not to state a claim against plaintiff's host motorist. It is significant to note that there, although the defendant-third party plaintiff alleged that the third-party defendant's negligence was the direct or sole cause of the collision, the court held that these allegations were mere conclusions and valueless.

Our courts have, in a long line of cases, permitted the recovery of indemnity by those to whom negligence is imputed as a purely secondary liability, or where the legal negligence of the indemnitee rests solely in his failure to discover and correct a dangerous condition caused solely by the one sought to be charged. Thus: where a city is held liable for the act of a property owner or of one maintaining an obstruction in a street (City of Springfield v. Clement et al., 205 Mo.App. 114, 225 S.W. 120, reversed on other grounds, 296 Mo. 150, 246 S.W. 175; City of Independence v. Missouri Pacific Ry. Co., 86 Mo.App. 585; Kilroy v. City of St. Louis et al., 242 Mo. 79, 145 S.W. 769; City of Columbia v. Malo, Mo.App., 217 S.W. 625; Kinloch Telephone Co. v. St. Louis, 268 Mo. 485, 188 S.W. 182); where a building owner is held liable because of the negligence of his tenant in obstructing a passageway, in violation of the terms of his lease (Barb v. Farmers Insurance Exchange, Mo., 281 S.W.2d 297); where the tort of an agent is imputed to his principal (State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W. 2d 481; Elzea v. Hammack, 241 Mo.App. 1070, 244 S.W.2d 594). In City of Springfield v. Clement et al., supra, the court said (225 S.W. loc. cit. 122): "The right of the city to recover in such cases from the wrongdoer by way of indemnity is confined to those cases where the city is not in pari delicto with the defendant, and it must be shown that the city's liability *does not arise in whole or in part from its own independent negligence.* The city's liability must arise solely from its constructive negligence in failing to remedy or prevent the consequences of the primary negligence of the person from whom indemnity is sought." (Italics ours.) This would appear to state a rule much more restrictive than a mere comparison of differing degrees of negligence.

Suggestions of a theory of "pari delicto," and occasional discussions of "active" and "passive" negligence appear in those cases,

and others (Elzea v. Hammack, 241 Mo. App. 1070, 244 S.W.2d 594; Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576); but it will be found in at least the vast majority of our cases, when the facts are accurately evaluated, that indemnity has been allowed "in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer * * *" (McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W.2d 788, 793) or in favor of one who has only a secondary duty as contrasted with that of the original and primary wrongdoer. Thus, on their facts, those cases involve more than a mere comparison of differing degrees of negligence by nonrelated parties.

The most recent case on the subject is Kansas City Southern Ry. Co. et al. v. Payway Feed Mills, Inc., Mo., Division One, 338 S.W.2d 1. That was an independent suit for indemnity, arising from the following facts: plaintiffs maintained switch tracks adjacent to defendant's warehouse or mill; immediately adjacent to these tracks, on a concrete pavement, defendant maintained heavy movable docks for its convenience in loading and unloading the cars; on two previous occasions defendant had been warned that one of its docks was so close to a switch track as to be dangerous to trainmen, and on each occasion it was moved by defendant; on this particular occasion, a switch foreman was injured while riding the side of a switching car because one of these docks had again been placed much too close to the track. The injury occurred at about 4:15 a. m., and at a place which was at least partially dark; the docks were maintained and used exclusively by the defendant and the plaintiffs maintained a regular switching service for the defendant at that point. The railroads, for all practical purposes admitting liability under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., settled with the injured employee for $15,000, and thereafter recovered full indemnity from the defendant. The case was tried to a jury;

the defendant urged on appeal that a verdict should have been directed for it. This contention was denied and the judgment was affirmed. The court quoted with approval from an Illinois case (Gulf, Mobile & Ohio Railroad Co. v. Arthur Dixon Transfer Co., 343 Ill.App. 148, 98 N.E.2d 783, cited also by plaintiff here) contrasting "affirmative, active, primary" negligence with "technical or passive" negligence and permitting a recovery of indemnity by one guilty only of the latter. The court reviewed the line of Missouri cases which we have already discussed. It held, after quoting also from Restatement, Restitution, § 95, that: (1) defendant had *actively* created a dangerous situation by permitting its dock to be located in a dangerous position, after notice; and (2) that the railroads, while liable under the Federal Employers' Liability Act, were chargeable only with *passive* negligence in failing to discover the condition and correct it, which did not bar their recovery of indemnity. The jury had found against a claim of contributory negligence on the part of the injured employee and the court held, and properly so, that he was not guilty of such negligence as a matter of law (which would have been imputed to plaintiffs). The court further held that no negligence was shown in the movement of the cars, which left plaintiffs chargeable only with a failure to discover.

It seems clear to us that in the Payway case there existed a contract or quasi contract relationship between the parties which might well be held to support a claim of indemnity. In that view, the opinion does not constitute a departure from the underlying theory of our prior cases. And we note again that the court there specifically held that plaintiffs were only chargeable with negligence in failing to discover and correct the dangerous situation.

In our case Brown is charged with primary negligence, by six different specifications, all of which involve independent action on his part, and not merely with

a *failure to discover and correct* the condition created by the stopped car. True, he was charged with failing to discover it in time, but he was also charged with affirmative negligence in running into it violently, by reason of excessive speed, failure to stop, slacken or swerve, and in failing to have his car under control and keep to the right. This cannot be "passive" negligence; and this situation bears no similarity to one where Brown would, because of some pre-existing relationship, merely be under a duty to discover and correct a dangerous condition caused solely by Crouch and not joined in by Brown. Brown's only duty here, under our statutes, was to exercise the highest degree of care in driving, so as not to run into Crouch's car. Brown is thus charged with active negligence; if he is found, upon trial, to have been guilty of no negligence, then the whole matter ends there and no indemnity is needed. We do not believe that indemnity should be required as between joint tort-feasors involved in a two-car automobile collision on a highway because of supposedly different types or degrees of negligence. See again: State ex rel. Siegel v. McLaughlin, Mo. App., 315 S.W.2d 499, 507–508, where the court said (quoting): " 'In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.' " See also Creech v. Riss & Co., Mo., 285 S.W.2d 554. Our statutes make no distinction whatever in the degree of care imposed upon operators of motor vehicles. We find no validity in Brown's attempted distinction on the ground that here both vehicles were not *"moving."* Siegel, supra, 315 S.W.2d loc. cit. 504. His vehicle was moving, and his negligence was active. The asserted difference in our facts is not determinative when we analyze the applicable tests and principles. Brown's conclusory allegation that by the "mere fact of said collision" the allegations of plaintiff's petition were made to state a cause of action against him, is wholly insubstantial in view of the facts alleged in his own petition and in plaintiff's petition. He is not charged with negligence by reason of the *mere fact* of a collision. And the question of "sole cause," also alleged by him, is a matter of defense, available to him in any event without the presence of the allegedly negligent third party. See, generally, Hall v. Clark, Mo., 298 S.W.2d 344, 348 [3–6].

We do not find the Payway case controlling here, nor are we persuaded to impose liability by reason of two additional cases cited from other jurisdictions. Terminal R. R. Ass'n of St. Louis v. United States, (8 Cir.), 182 F.2d 149; Parrish v. DeRemer, 117 Colo. 256, 187 P.2d 597. These merely illustrate further the confusion attending any attempt to formulate a fixed rule. What was said on this subject in the Terminal Railroad case, supra, appears to be dicta, for liability was denied on a wholly different ground. The difficulty of formulating a rule of indemnity to govern all cases is illustrated and well discussed in McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W.2d 788. As said there, loc. cit. 793: "All of these tests seem to be attempts to apply equitable principles and none of them satisfactorily explains all cases." We have seen sundry tests suggested or mentioned (at least as partial guides) in the various cited cases, including: the "pari delicto" rule; the contrasting of "active" and "passive" negligence; whether one party has created a dangerous condition in which the other has not joined; and the rule establishing liability in favor of one who has been held responsible solely by imputation of law because of his relation to the actual wrongdoer. In our case it really makes no difference which of these rules we follow. We hold that Brown:

(1) was in pari delicto with Crouch; (2) that if Crouch *created* a dangerous condition, Brown joined in his act by making the danger effective as to plaintiff; (3) that Brown's negligence was active; and (4) that Brown may not be held responsible in plaintiff's action solely by imputation of law but, if at all, only by reason of his own personal, active, primary negligence. No "primary responsibility" for this tort rests upon Crouch. See Elzea v. Hammack, 241 Mo.App. 1070, 244 S.W.2d 594, 604. As stated by this court in State ex rel. and to Use of Merino v. Rose, 362 Mo. 181, 240 S.W.2d 705, at loc. cit. 708–709: "We are here considering a tort action only, not one of derivative liability, wherein the liability of the third-party defendant to the third-party plaintiff might possibly arise by legal relation or by antecedent contract between them." Brown's argument that Crouch created a dangerous condition on the highway and thereby became liable to him ignores his own participation as shown by all the essential factual allegations, when conclusions are disregarded.

The motion to dismiss the amended third-party petition was properly sustained and the judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion by EAGER, J., has been adopted as opinion of the court en banc.

HYDE, C. J., and STORCKMAN and DALTON, JJ., concur.

LEEDY, J., dissents in separate opinion.

WESTHUES and HOLLINGSWORTH, JJ., dissent and concur in opinion of LEEDY, J.

LEEDY, Judge (dissenting).

Appellant, by his third-party petition (from the dismissal of which he appeals), sought indemnification against what was then, and is now, an indefinite and contingent liability, the amount of which is not only unknown, but presently incapable of being known, that is to say he sought to be indemnified for such damages, costs, etc., *if any*, as might be rendered in favor of the wife of the third-party defendant, Mayma, in her action against appellant. The only possible reference in the record to any sum within the monetary jurisdiction of this court is in the prayer of Mayma's petition wherein she asks damages in the sum of $25,000. It is quite true that if that petition alleging $25,000 damages had been adjudged insufficient for failure to state a claim (or had judgment been rendered against her on the merits), then, for appellate jurisdictional purposes, the amount sought in her petition would be regarded as the "amount in dispute." But if (as in the instance now at bar) Mayma's petition had failed to pray judgment for a sum which could be definitely determined to be within the monetary jurisdiction of this court, then it inevitably and plainly follows that her appeal would not be cognizable in this court. So it is a non sequitur to say that the present appeal comes here because of the fact that the main case, in the circumstances first above hypothesized, would have come here. It seems to me it would be the other way around, i. e., that the present appeal should go to the Court of Appeals, just as Mayma's appeal would have gone there in the absence of an allegation or showing that the amount claimed by her was in excess of $15,000—not that perchance it might exceed that sum. That the amount claimed by Mayma in her own petition does not constitute the "amount in dispute" in appellant's third-party petition against Mayma's husband readily appears from the prayer of the latter which is strictly limited to a demand for "judgment against the third-party defendant for all sums of money that *may be* adjudged against him in favor of the plaintiff, together with the expense of defending this action and his costs." (Italics ours.)

In any event, the "amount in dispute" or the value of the relief sought can be no more than the amount which may be awarded against appellant in Mayma's action, and the mere chance or possibility that such sum, if and when rendered, may exceed $15,000 is insufficient to give this court jurisdiction of the appeal. In this connection, there is a striking analogy to be found in Cotton v. Iowa Mut. Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246, 249, which the principal opinion cites approvingly. That was a declaratory judgment action to determine the insurance company's liability under its $100,000 automobile liability policy in the event that judgment was entered against its insured in an action brought by the plaintiff (in the declaratory judgment action) for certain personal injuries sustained by him in an automobile accident which allegedly resulted through the insured's negligence. The amount sued for in such personal injury action did not appear in the declaratory judgment action. In holding in the declaratory judgment action that this court was without jurisdiction, it was said, "The instant plaintiff may never recover a judgment or secure a settlement and, if not, he will acquire no right under the policy provisions. This is relevant to the rule that the mere chance of a judgment or settlement exceeding $7,500 [$15,000] does not establish appellate jurisdiction here." It is familiar doctrine "that the appellate jurisdiction of this court, on the ground of the amount in dispute, attaches when, and only when, the record of the trial court affirmatively shows there is involved in the controversy, *independent of all contingencies,* an amount exceeding $7,500 [$15,000], exclusive of costs." (Italics ours.) National Surety Corp. v. Burger's Estate, Mo., 183 S.W.2d 93, 95. A mere chance that the amount in dispute may exceed $7,500 [$15,000] does not give this court jurisdiction. Platies v. Theodorow Baking Co., 334 Mo. 508, 511, 66 S.W.2d 147, 148; Grant v. Bremen Bank & Trust Co., Mo., 108 S.W.2d 347, 348; Higgins v. Smith, 346 Mo. 1044, 144 S.W.2d 149, 150.

I submit that it does not affirmatively appear from the record that, "independent of all contingencies," the amount in dispute or the monetary value of the relief sought is in excess of $15,000, as expressly required by the cases cited in the principal opinion to vest jurisdiction of this appeal in this court. I therefore dissent to the contrary holding of the principal opinion on the jurisdictional question.