Carl DALY (Plaintiff), Appellant,

v.

Robert SCHAEFER (Defendant),
Respondent.

No. 30201.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1960.

Motion for Rehearing or to Transfer to
Supreme Court Denied Feb. 17, 1960.

Schomburg & Marshall, Glen C. Schomburg, Richard M. Marshall, St. Louis, for appellant.

Schwartz & James, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondent.

RUDDY, Judge.

Appellant brought an action against respondent for property damage and personal injuries which appellant alleges resulted from the negligence of respondent in the operation of his automobile. The prayer of appellant's petition asked for total damages in the sum of $15,000. We shall refer to the parties as they were designated in the trial court. The verdict and judgment was in favor of defendant and plaintiff appeals.

■ The amount in dispute under the pleadings would vest jurisdiction in the Supreme Court. However, we are not restricted to the pleadings in determining our jurisdiction and we may look to the record for such determination. Counsel for plaintiff in his argument before the jury in the trial court told the jury he thought the sum of $6,000 would be a fair and proper sum for property damage and personal injuries sustained by plaintiff as a result of the collision. Under plaintiff's trial theory on the issue of damages jurisdiction of the appeal is in this court. Beasley v. Athens, 365 Mo. 158, 277 S.W.2d 538; Mitchell v. Southwestern Bell Telephone Co., Mo.App., 298 S.W.2d 520.

The first point relied on by plaintiff is that the trial court erred in overruling his motion for a directed verdict. In support of this point plaintiff contends that defendant's own testimony and the uncontroverted portion of defendant's deposition,

read into evidence by plaintiff, established plaintiff's case that defendant was guilty of negligence proximately causing the collision and that plaintiff was free of contributory negligence. This point requires a review of the facts.

Plaintiff and defendant were driving their respective automobiles southwardly on Lindbergh Boulevard near Clayton Road in St. Louis County, Missouri, about 10 p. m. on May 11, 1957. Lindbergh Boulevard is a four lane highway with two lanes for southbound traffic and two for northbound traffic. A concrete island, which extends approximately 300 feet south of Clayton Road, separates the southbound traffic from the northbound traffic. South of Clayton Road there is an opening in the island which permits southbound traffic on Lindbergh to make a left turn into places of business on the east side of the highway. According to plaintiff's estimate the opening is 250 feet south of Clayton Road. The flow of automobile traffic at the intersection of Lindbergh and Clayton Road is controlled by electric signals. On the night the collision occurred, the weather was clear and the pavement dry. Plaintiff and defendant were driving their respective automobiles in the inner lane for southbound traffic. Plaintiff did not recall if he had to stop at the electric signal. He thought he crossed Clayton Road without stopping. A passenger in plaintiff's automobile testified that plaintiff stopped his automobile at the intersection. Defendant was certain that he (defendant) had the "green light" in his favor and did not stop at the electric signal.

Plaintiff testified that he crossed Clayton Road at a speed of 15 miles per hour. There was traffic ahead of him in the lane in which he was driving and there was a steady flow of traffic in the outside lane to his right. He accelerated his speed after he crossed Clayton Road to 20 miles per hour which was the highest speed he attained prior to the collision. He maintained a distance of 36 to 40 feet behind the car in front.

Defendant testified that there was traffic in the outside lane and in front of him in the lane in which he was driving. He said he crossed Clayton Road at a speed of 30 to 35 miles per hour and that plaintiff's automobile, prior to stopping, was traveling at the same speed immediately in front of him. Defendant maintained a distance of about 30 to 40 feet behind plaintiff's automobile.

The testimony of plaintiff and his witnesses concerning the events immediately preceding and at the time of the collision shows that after plaintiff crossed Clayton Road he was about two car lengths (36 to 40 feet) behind the automobile in front of him as both automobiles proceeded southwardly. When plaintiff was about 50 or 60 feet north of the opening or break-through in the island he noticed the stop light on the automobile in front indicating stop and "the car ahead * * * did a braking or stopping motion" and came to a stop. The operator of the automobile in front gave no signal other than the stop light.

Plaintiff described the manner of the stop made by the automobile in front of him as a "quick stop * * * the man had to stop deliberately, positively." It was a "quick and abrupt stop." Plaintiff immediately applied the brakes on his automobile. In describing the kind of stop he made, he said it was a "quick stop"; "a sudden and quick stop"; "a quick and positive stop." A passenger in plaintiff's automobile said the automobile in front came to a "sudden stop" and that plaintiff's automobile came to a "very sudden stop." He was afraid plaintiff "wasn't going to be able to stop" his automobile in time to avoid a collision. Plaintiff said there was another automobile in front of the automobile ahead of him. He did not know what caused the automobile in front of him to stop. However, Mary Walsh, a witness for plaintiff, who was a passenger in the automobile immediately in front of plaintiff's automobile, said a car in front of the one she was in stopped short, "very suddenly" without giving a signal prior to making a left turn at the opening in the island. She said the

automobile she was in was brought to a sudden stop.

Plaintiff said the automobile ahead stopped 20 to 30 feet north of the opening in the island. After both automobiles stopped the distance between them was 5 or 6 feet. Plaintiff did not know whether the stop light on his car was working. He gave no other signal or warning to the operator of the automobile behind him, stating he did not have time to throw out his hand "or give any signal or warning."

Plaintiff further testified that after he came to a stop, a period of one to two seconds passed and then he heard the "squealing of tires" behind his automobile for a period of three to four seconds. Immediately thereafter, the front of defendant's automobile collided with the rear end of plaintiff's automobile causing plaintiff's automobile to collide with the automobile in front. After the impact, which plaintiff described as "terrific," he noticed his passenger, Mr. Schroeder, motioning to turn off the ignition. It was then plaintiff became aware that his car was in gear and the motor was running causing the tires on his automobile to spin on the pavement, plaintiff's automobile having collided with the rear end of the automobile in front. Plaintiff then turned off the ignition on his automobile. The testimony given by plaintiff's passenger, Mr. Schroeder, of the events preceding and at the time of the collision was essentially the same as that given by plaintiff, except he gave no estimate of the elapsed time between the stop made by plaintiff and the collision. In this connection plaintiff's passenger testified that plaintiff was stopped "just for an instant" and then he heard "brakes screaming and we were hit from the rear * *."

Mary Walsh testified that the automobile she was in, ahead of plaintiff's car, was stopped a "few minutes" when she heard the crash and then felt the impact of plaintiff's automobile with the automobile in which she was a passenger. Plaintiff did not look for skid marks on the highway after the collision and neither did his passenger, Mr. Schroeder

Plaintiff further testified that after the collision six to seven feet separated his automobile and defendant's automobile. He said his automobile was approximately three car lengths north of the opening in the island after the collision.

At the close of plaintiff's case, counsel for plaintiff read to the jury a number of questions and answers contained in a deposition of the defendant taken by counsel for plaintiff. Among the questions and answers read to the jury was the following:

"Q. Do you recall telling me that all you could do was guess that you were daydreaming at the time?'

"A. I beg your pardon. Daydreaming, no. I wouldn't say that. If you call watching for traffic at an intersection daydreaming; I was probably not watching ahead as much as I should have, otherwise I wouldn't have had the accident probably."

We shall now advert to the testimony of the defendant concerning the events immediately preceding and at the time of the collision.

Defendant testified that while he was maintaining a distance of 30 to 40 feet behind plaintiff's automobile, the first knowledge he had of plaintiff's intention to stop was when he saw plaintiff's automobile "go down" and plaintiff "made a complete stop." Defendant was asked, "By going down, you mean you saw the front end dip and the rear end rise?" and he answered, "Yes." He saw no signal or sign given by plaintiff and said there was no reason for plaintiff to stop that he could see. He said plaintiff stopped about 50 feet north of the opening in the island. Defendant further said that plaintiff made a "very sudden stop." After defendant saw plaintiff's automobile come to this sudden stop he looked to his right to see if he could swerve out of the inside lane of traffic, found he could

not and then applied his brakes but was unable to stop in time to avoid colliding with the rear end of plaintiff's automobile. After the collision defendant's automobile stopped and defendant testified that plaintiff's automobile proceeded on and came to a stop 50 to 60 feet from the point of impact. Defendant thought plaintiff's automobile bumped into another automobile causing plaintiff's automobile to stop. He saw the wheels on plaintiff's automobile spinning after it came to a stop.

It is apparent to us from an examination of the aforesaid facts that the trial court did not err in overruling plaintiff's motion for a directed verdict.

Plaintiff states his evidence shows that he was required to stop because of the sudden stopping of the car in front and that a sufficient lapse of time occurred after he stopped and before the collision to establish defendant's negligence, and he further contends that defendant's testimony also establishes his negligence in this respect. Plaintiff's testimony shows that six seconds elapsed between the time he stopped and the time of the collision. We find nothing in defendant's testimony that concedes or establishes such a lapse of time. Also, defendant does not agree that plaintiff had to stop where he did. To the contrary is defendant's testimony that he saw no reason for plaintiff to make the stop.

■ Plaintiff also contends that defendant admitted he first looked to his right to see if he could swerve into the outside lane before applying his brakes. We see nothing in this testimony of the defendant to hold that he was negligent as a matter of law. From this testimony the jury could have found that under the circumstances, as testified to by defendant, the only avenue open to avoid a collision was for defendant to swerve into the outside lane if traffic in that lane permitted. At least the issue of defendant's negligence, if any, in that respect was for the jury.

■ Plaintiff further contends, in connection with his first point, that defendant was very definite in his testimony that he could stop his automobile in 30 feet under the conditions present. Plaintiff's counsel in cross examination asked defendant: "Do you think you might have been able to stop in thirty feet under those conditions?" As we understand defendant's answers he never did say he could have stopped in thirty feet. He answered that he was "not an expert," was "just a layman" and to say he could have stopped in thirty feet would be "a wild guess." No attempt was made by plaintiff's counsel to account for reaction time. There was no evidence as to plaintiff's reaction time to see and comprehend the need to stop or swerve to avoid the collision. In the absence of evidence on reaction time, the court takes judicial notice that three-fourths of a second is required. Edwards v. Dixon, Mo.App., 298 S.W.2d 466; McKinney v. Robbins, Mo.App., 273 S.W.2d 513.

Defendant testified both cars were traveling 30 to 35 miles per hour. Defendant under such speeds would have driven 34 to 39 feet before taking any action to avoid the impending collision. Plaintiff's contention that defendant could have stopped in 30 feet is without substance.

■ Finally, in support of his first point, plaintiff contends that defendant established his own negligence when he said in his deposition that he "was probably not watching ahead as much as I should have, otherwise I wouldn't have had the accident probably." Plaintiff seems to contend that this statement of defendant is a judicial admission of negligence. Before discussing this contention, we point out that plaintiff has the burden of proving defendant's negligence and where plaintiff's proof rests on oral testimony he is not entitled to a directed verdict, and this is true even though defendant offers no evidence, as the credibility of plaintiff's witnesses and the weight to be given their testimony and that

of plaintiff is for the jury. Beezley v. Spiva, Mo., 313 S.W.2d 691; Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558.

However, plaintiff points to an exception to this rule as we have stated it and asserts it is applicable to the instant case. He refers to the exception stated in Rogers v. Thompson, supra, wherein the court said: "This general rule is not applicable in unusual situations where defendant in his pleadings or by his counsel in open court admits plaintiff's claim, or by his evidence also establishes plaintiff's claim * * *." (265 S.W.2d loc. cit. 287.)

In the case under review defendant in his answer denied all the averments of negligence alleged by plaintiff in his petition. Cluck v. Abe, supra. No admission of liability for plaintiff's claim was made by defendant's counsel. We do not think that the statement made by defendant when his deposition was taken establishes plaintiff's claim. It is clear from the statement relied on by plaintiff that defendant was not admitting he was negligent or liable for the accident. His entire answer is based on probabilities and when considered with his testimony given at the trial the jury could have found that defendant, faced with a situation wherein a collision seemed inevitable if he continued in the same lane, looked for a means which he considered preferable, namely, swerving into the lane to his right as an escape from colliding with plaintiff's car. If the lane had been free to receive defendant's automobile, in all likelihood a collision would not have occurred.

We think the statement of defendant given in answer to a question when his deposition was taken when considered with his testimony at the trial shows no admission of any act or fact that constituted a judicial admission of liability for the accident. As we said, it does not constitute an admission of plaintiff's claim and is based wholly on probabilities and is a mere conclusion or opinion of defendant.

A mere expression of an opinion where the witness has not testified to a fact or facts consonant with the opinion does not come within the exception to the general rule sought to be applied by plaintiff to defendant's statement in the instant case. Rowe v. United Rys. Co. of St. Louis, 211 Mo.App. 526, 247 S.W. 443, 445. Moreover, for defendant's statement to have the force of a judicial admission, the testimony relied on by the plaintiff must be clear and unequivocal. 32 C.J.S. Evidence § 1040, p. 1112. The exception to the general rule relied on by plaintiff has been limited to situations where the proof establishes beyond all doubt the truth of the facts which as a matter of law entitle the proponent, plaintiff in this case, to the relief sought and where such proof is unimpeached and uncontradicted the proponent will be entitled to a directed verdict. This is upon the theory that there is no question of fact left in the case for the jury's consideration. Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691. A perusal of the evidence in the instant case shows the existence of a real dispute concerning the important facts.

In an oft announced rule it is held that it is very seldom a trial court is justified in directing a verdict in favor of a party having the burden of proof when the case depends upon oral testimony. Schaefer v. Accardi, Mo., 315 S.W.2d 230; Beezley v. Spiva, supra. We have reviewed the cases cited by plaintiff and find nothing in them inconsistent with what we have said. It is our ruling that the trial court committed no error in overruling plaintiff's motion for a directed verdict.

Plaintiff in his next point complains about the giving of Instruction 3. This instruction submitted to the jury for its consideration the contributory negligence of plaintiff.

Plaintiff asserts that the instruction was broader than the evidence in that (1) there was no evidence that plaintiff

did not give a timely signal of his intention to stop, (2) there was no evidence that plaintiff's vehicle was stopped "immediately in front of and in the path of defendant's automobile, and (3) there was no evidence that defendant was following so closely behind plaintiff that defendant might have been unable to avoid a collision without a reasonably adequate and timely warning. For the most part plaintiff reiterates the same contentions he made in support of his first point. What we said aforesaid is a sufficient answer to those contentions. A reading of the argument made by plaintiff in support of his contentions reveals a complete misunderstanding of the rule governing our duty in reviewing his appeal. Where the verdict is in favor of the defendant we must consider the evidence favorable to the defendant and the verdict and disregard unfavorable evidence in determining whether there was evidence in support of defendant's instruction submitting plaintiff's contributory negligence. Palmer v. Lasswell, Mo., 287 S.W.2d 822; White v. Rohrer, Mo., 267 S.W.2d 31. An example of what we mean concerning the apparent misunderstanding of the rule is contained in plaintiff's contention that he should "be entitled to have considered on his behalf the fact a vehicle came to a sudden stop in front of him and that, therefore, there was no opportunity whatsoever for him to have given a more timely signal than that which was given." The only testimony concerning the sudden stopping of a vehicle in front of plaintiff was adduced by plaintiff and his witnesses. As we pointed out before, defendant testified he saw no reason for plaintiff to make the stop. He further testified plaintiff traveled 50 to 60 feet after the collision before striking another car.

Plaintiff further contends that the evidence shows there was adequate opportunity for defendant to come to a normal stop. In making this statement plaintiff is relying on his testimony that six seconds elapsed from the time he stopped to the time of the collision. Defendant's testimony was in conflict with plaintiff in this respect. Several other contentions made by plaintiff in support of his complaint against Instruction 3 are subject to the same error.

Viewing defendant's evidence in the most favorable light, as we must do, we find that plaintiff made "a very sudden stop" without a reason and the need to do so, while defendant was traveling 30 to 40 feet behind plaintiff's automobile; that plaintiff gave no signal of his intention to stop, and that the first knowledge defendant had of plaintiff's intention to stop was when he saw the front end of plaintiff's car "dip and the rear end rise." From this evidence the jury had the right to find that plaintiff came to a sudden and abrupt stop when he was immediately in front of and in the path of defendant's automobile; that plaintiff would have had sufficient time to give a timely warning, inasmuch as defendant's evidence showed that 50 to 60 feet intervened between plaintiff's automobile and the automobile in front of him and, therefore, plaintiff had no reason to stop where he did.

In the case of Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, loc. cit. 248, we said that it was for the jury to say whether defendant in that case stopped his cab with such abruptness as to convict him of negligence in failing to give a reasonable warning of his intention. We find the evidence sufficient to support the contributory negligence submitted in Instruction 3.

Plaintiff next contends that even though there is sufficient evidence to support the negligence submitted in Instruction 3 that such negligence was not the proximate cause of the collision. Under the evidence favorable to the defendant the jury could reasonably find that had plaintiff given an adequate and timely warning, the collision could have been averted. The issue of proximate cause was properly submitted to the jury.

The next complaint made by plaintiff is that the trial court erred in giving Instruc-

tion 5 offered by defendant. The pertinent part of said instruction is as follows: "The Court instructs the jury that before the plaintiff can recover against the defendant, for injuries in this case, the burden is upon him to prove, by a preponderance, that is, the greater weight of the credible evidence, that at the time of the occurrence mentioned in the evidence he sustained injuries, and unless you so find that he was injured, then your verdict must be in favor of the defendant."

Instruction 7 given by the court told the jury if it found the issues submitted in other instructions in favor of plaintiff, then in assessing damages it may take into consideration, in addition to items concerning personal injuries, the following: "(1). For damage, if any, to Mr. Daly's automobile, as a direct result of the collision, if any, and not to exceed on this account the sum of one thousand and eleven dollars ($1,011.00)."

Plaintiff's Instruction 7 permitted the jury to compensate plaintiff for any property damage sustained by plaintiff to his automobile, in addition to recovery for personal injuries sustained.

Instruction 5 directs a verdict for defendant if the jury finds plaintiff did not sustain personal injuries. In other words, this instruction told the jury that even though it found the issues for plaintiff and further found that plaintiff sustained damage to his automobile, the verdict must be for defendant if it found plaintiff was not injured. This instruction was in positive conflict with Instruction 7 which authorized a recovery for damage to plaintiff's automobile even though the jury found plaintiff did not sustain personal injuries. In clear and unmistakable language the instruction told the jury that unless it found plaintiff sustained personal injuries the verdict must be in favor of defendant. This was a misdirection. Under the evidence, the jury could have found plaintiff was not personally injured and could have found that he sustained damage to his automobile.

If the jury found plaintiff sustained damage to his automobile it was the duty of the jury to bring in a verdict in plaintiff's favor for such damage if it found defendant was negligent and plaintiff was free of contributory negligence.

In defense of Instruction 5 defendant points to the rule that each instruction must be read in conjunction with and in the light of the other instructions. When read in conjunction with the only other instruction on damages, it is in irreconcilable conflict. Instruction 7 told the jury plaintiff was entitled to damages for personal injuries or property damage or both.

Instruction 5 told the jury that unless the jury found plaintiff sustained personal injuries, he was entitled to no damages. It would be pure speculation for us to attempt to say which instruction the jury followed.

Defendant further contends that the language at the beginning of the questioned instruction expressly limits its effect to plaintiff's right to recover for injuries and that, therefore, the instruction dealt only with that issue and that the jury would construe the word "verdict" in the sense of a "finding" on the issue of personal injuries. The fallacy of defendant's position in this respect is that the closing part of the instruction was not so limited. It told the jury that "unless you so find that he (plaintiff) was injured, then your *verdict* must be in favor of the defendant." This clearly told the jury that plaintiff could not recover at all unless he sustained personal injuries and that no further finding, such as property damage, was authorized.

Defendant finally contends in defense of Instruction 5 that any alleged error in the respect complained of by plaintiff was self-invited, pointing to language in plaintiff's Instruction 1 on the issue of defendant's negligence. The damages permitted to be found by the jury were itemized in Instruction 7 and there is nothing in that instruction that imposes on plaintiff the burden of proving that he sustained per-

sonal injuries before the jury had the right to find in favor of plaintiff on the issue of property damage sustained.

It may have been that the jury found the issue of liability in favor of defendant and never reached the issue of damages. However, it would be pure speculation and surmise on our part to so rule. Conceivably the jury could have found the issues of liability and property damage in favor of plaintiff and further found that plaintiff sustained no personal injury. Under the mandate of Instruction 5 the jury had to bring in a verdict in favor of the defendant. We think it was prejudicial error for the court to give and read Instruction 5 to the jury.

In view of the need to reverse the judgment and remand this cause for a new trial, other points raised by plaintiff need not be discussed.

Because of the prejudicial error in giving Instruction 5, the judgment should be reversed and the cause remanded for a new trial. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.