R. J. REYNOLDS TOBACCO CO., INC., Plaintiff in Error,

*v.*

ROY ROLLINS, Defendant in Error.

(*Knoxville*, September Term, 1957.)

Opinion filed June 6, 1958.

FRAKER, SILVERS & COLEMAN, Greeneville, for plaintiff in error.

JOHN A. ARMSTRONG, Greeneville, for defendant in error.

Mr. Justice Swepston delivered the opinion of the Court.

This is an action filed under T.C.A. sec. 50-1025 by Roy Rollins to increase the amount of a previous compensaiton award made to him and approved by the same trial judge. In the previous case the court made an award of 75% of the loss of a leg at the rate of $28 per week for 131.25 weeks from March 10, 1955. The present petition was filed on July 24, 1957, a few weeks before the prior award would have expired.

Proof was heard, after which the court awarded petitioner permanent-partial disability to the extent of 75% to his body as a whole at the rate of $28 for 168.75 additional weekly installments.

The court made the following finding:

"At the time I tried or heard this case before I seriously considered giving this man 75% partial, permanent disability to his body as a whole, but out of the abundance of caution I confined it to 75% disability to his leg. I was at that time hoping that it would be retained on the docket, or if not on the docket if I was mistaken in finding what I did, the case would be reopened so I could correct a mistake and I think this has happened. I think I made a mistake the first time. I think I should have allowed him 75% disability to work to his body as a whole, and now this has given me the opportunity of hearing evidence to determine whether or not I was mistaken in the first place, and from the proof introduced by the plaintiff it now appears and I so find that he has done his best to work and has been unable to work. He has tried to work at the jobs he is

able to work at, and when he does he falls down and can't continue working; and he has tried this all the way from here to New Orleans. I now find from the proof introduced on this particular reopening of the case that this man has a partial, permanent disability to his body as a whole which renders him unable to do 75% of the work he was able to do before he had this injury, and that he now has only a 25% ability to earn any wages at all, or to engage in any work that would bring him more than 25% to what he was formerly able to earn in this condition before he had his injury.''

The assignments of error raise two questions: first, that the trial judge had no right under said Section 50-1025 to correct any mistake that he had made in his former judgment, and second, that there is no material evidence to support the finding of any increase in disability.

The only testimony in behalf of the petitioner on this second hearing was his own testimony the substance of which is as follows:

''XQ. The situation is exactly what it was before? A. I wouldn't say it was. At that time I didn't know whether I could hold down a job or not, and now I know I can't.

''XQ. The situation at that time was, you thought you would get better, and now you know you are going to stay the same? A. Well, the doctor says my leg is perfectly normal, but I can't see that it is getting any better.

"XQ. What the situation is now is just exactly what it was at the time the Court awarded your disability? A. Not in my mind.

"XQ. I say, the way you feel now is the same as the way you felt then? A. No, sir.

"XQ. What is the difference? A. At that time I figured I would be able to go back to work, and now I know I won't.

"XQ. At that time you felt like you were going to make improvement, and now you know you are not? A. That is right.

"XQ. That is the only difference? A. Let us go back just a minute.

"XQ. Tell me whether there are other differences between then and now, and we will go back. A. Well, I will tell you the difference in it now and at that time. It stays dead continuously now, and it would go to sleep occasionally then.

"XQ. You have always had difficulty with it going to sleep? A. Yes, but there is a difference in its going to sleep and being numb like it is now.

"XQ. It is not numb enough that you don't walk? A. Sure, I can move it.

"XQ. Sometimes it gets number? A. That is right.

"XQ. Sometimes it is a little bit numb, and the rest of the time it is all numb? A. That is right.

"XQ. When it is a little bit numb where is it numb? A. Right in there. (Indicating.)

"XQ. And then it gets numb the rest of the way? A. Yes, sir, to the end of my toe.

"XQ. And at times it gets better and is not numb? A. No, sir, it is numb all the time.

"XQ. That is the way it was then? A. It stays asleep continually now for hours. I will go to sleep and wake up and have to rub my leg to get any feeling in it.

"XQ. You say you fell down four times? A. Yes, sir, I have got scars to show where I feel down between two bars of steel." Second Tr. pp. 26-28.

"XQ. The only difference back when the Court heard you before and now, you state that your leg gets numb some of the time? A. Yes, sir, and I am not able to hold down a job.

"XQ. Did you tell the Court at that time you were not able to hold down a job? A. I have worked, I tried since that time, and I wasn't able to hold it down.

"XQ. You tried one time and fell several times? A. Yes, sir." Second Tr. p. 31.

The difficulty about accepting this evidence as proof of an increase of disability, however, is that he testified, as we see it, exactly the same in substance on the previous hearing and we will quote certain extracts therefrom in order to demonstrate what we mean.

His regular occupation was that of a structural steel worker foreman and particularly his job was to bolt up structural steel as it was fitted into place in the construction of buildings. On page 21 of the previous record

where he was testifying that he could no longer work at that job, he had this to say:

"You climb up the steel work? A. Yes, sir, that is right.

"Q. And that is very high above streets and things? A. Very high and you have the other man's life at stake when you are up there, *and I had to quit this year due to my leg going to sleep on me.*"

On page 22 he was asked and answered as follows:

"Q. Do you have any feeling in that leg? A. Its numb, it has a numb feeling all the time.

"Q. Now, have you been able, have you been able to follow your usual occupation since that time? A. I can't stay on my feet that long. If I stay in one position my foot goes to sleep and if I move around it gets tired."

Then at the bottom of that page and the top of the next, he testified that in his own opinion of the loss of the use of his leg amounted to 75 to 80%.

He then testified that he had tried to work at his old job and that he did work a short time in Detroit as a foreman, which was his regular job.

Now on page 27, further testimony was:

"Q. Despite your opinion as to the disability to your leg there are a number of things that you are able to do with that leg, is that not true, Mr. Rollins? A. Well, now in one way there, in other words, I can get around, I can go across the room but—

"Q. You can get around very adequately, can you not? A. As for staying on my leg all day, 8 hours or something like that, I can't do it. If I sleep at night it is impossible for me to do it because if I stay on it all day I can't sleep at night.

"Q. In fact, your only troubles are that sometimes your leg goes to sleep on you and it gets tired if you stay on it all the time? A. That's right. If you get in a car and go 15 minutes if I don't possibly keep my leg moving it goes to sleep on me. Well, you driving down the highway with your leg asleep you are in a heck of a shape if you would have to do something for your car.

"Q. You can keep your leg awake by moving it but that tires you out? A. If you keep, you've got, just like I am sitting still now, if I don't keep my leg moving some, why it will go to sleep just like that?

"Q. And except for your work in the nature that Mr. Armstrong described you can do just about everything else, perhaps with some discomfort, but you can use that leg adequately in every other respect? A. Well, how adequately would be well.

"Q. Well, you've got, you are a good deal better off than if you didn't have any leg at all, aren't you? A. Oh yes, that is definite sure.

"Q. And you are a good deal better off than if you just had half a leg, aren't you? A. Well, when you walk around the thing feels numb against your leg. I don't know how it feels to just have half a leg." Then on page 29, he answered:

"A. As far as using my leg I can get around but just like I said I can't use it 8 hours, I can't sit 8 hours even if I had a sitting job I can't stay in one place 8 hours.

"Q. If you had to sit for 8 hours your leg would go to sleep? A. That's right.

"Q. Then you have to move it till it woke back up? A. That's right.

"Q. And then you could sit awhile longer after it woke back up? A. Providing I kept moving my leg.

"Q. In other words, every once in awhile you would have to do something to keep your leg from feeling numb? A. That's right.

"Q. And that really is the total degree of disability that you have? A. Plus the fact that you have got to think of that leg all the time. If you don't it goes to sleep on you.

"Q. You have to think of the leg? A. Why, sure, if you get your mind on something else and it goes to sleep that's no funny feeling, I could tell you that.

"Q. And on the other hand if you do think about your leg you can keep it awake, is that right? A. Yes, if you think about it, but you can't stand there on a job thinking about your leg all the time."

Then on page 47, he testified that when he was at the doctor's office a few days before the first trial, he saw the doctor run his hand down along his upper leg but he did not realize until two or three days later when he was bathing that the doctor had cut or scratched his leg because he had no feeling in it.

It seems apparent to us, therefore, that he was no more capable of holding down either his old job or any other job at the time of the first trial than he is today. His testimony on the present hearing shows that he thought that the condition of his leg would improve and that he would be able to work at some sort of a job with the 75% disability to his leg. The trial judge thought the same thing. However, that was simply a mistake on the part of each one of them but that mistake can not be rectified under the above section of the statute because such evidence of failure of the condition to improve is by no means proof of an increase in disability.

We think the case of *Shockley v. Morristown Produce & Ice Co.*, 171 Tenn. 591, 106 S.W. 2d 562 (relied on by plaintiff in error) is not in point. That was a case of a lump sum settlement approved by the court which judgment, although based upon a mistake of law, was five years old and *res adjudicata*.

There can be no doubt that, if the employee here had shown an increase in his disability, he would have been entitled to an increased award. Yet no case anywhere, insofar as we have been able to find, holds that the above section of the statute authorizes or permits a court to correct mistakes in conclusions of fact drawn from the evidence on the issue under consideration at the original hearing. 71 C.J. 1436, Sec. 1396, esp. notes 70-76; 58 Am. Jur. 894, Sec. 510.

We are constrained, therefore, to reverse the judgment below and dismiss the petition for there is no material evidence to support the action of the trial judge.