### UNION ELECTRIC COMPANY, a Corporation, Appellant,

v.

### M. D. MAGARY, d/b/a M. D. Magary Construction Company, and Chester Watters, Respondents.

No. 49933.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for appellant.

Evans & Dixon, Wm. W. Evans, John F. Evans, St. Louis, for respondent.

HOUSER, Commissioner.

Claim of indemnity by an electric company against a contractor for $100,000 paid by the electric company to an employee of the contractor for damages for personal injuries sustained when he came in contact with the electric company's 2,500 volt transmission line while performing duties of his employment. Marvin Gillam, the employee, sued Union Electric for $250,000 damages, later increasing his prayer to $325,000, for negligent infliction of injury. Union Electric obtained leave and filed a third-party petition against M. D. Magary, d/b/a Magary Construction Company, and Magary's superintendent, Chester Watters, for indemnity for the amount of any liability of Union Electric to Gillam, on the theory that Magary and Watters were primarily liable. Before trial Union Electric paid Gillam $100,000 in settlement of his suit. Union Electric filed an amended third-party petition alleging the settlement and payment. Third-party defendant Magary filed a motion for summary judgment, one ground of which was that under the law and the evidence Union Electric is not entitled to recover against Magary. Third-party defendant Watters filed a motion for summary judgment on the ground that the amended third-party petition fails to state a claim upon which relief can be granted against Watters. These motions were sustained. Final judgment was entered for third-party defendants. From the judgment Union Electric has appealed.

From the amended third-party petition, affidavit, pleadings, exhibits, stipulation of counsel and evidence, the facts pertinent to the inquiry are these:

Magary contracted with Moll Grocery Company to paint the 40-foot smokestack of its incinerator and replace a spark arrester located at the top. The smokestack was located at the rear of Moll's premises at 1717 South Brentwood Boulevard in St. Louis County. Union Electric owned and maintained a power line at the rear of the grocery store. Built in 1943 on a 10-foot easement, and rebuilt in 1954, the electric facilities consisted of a bare, uninsulated 3-wire electrical circuit strung between porcelain insulators affixed to wooden cross-arms attached to upright wooden poles. Each wire carried 2,500 volts of electricity. A transformer was attached

to the south side of the pole closest to the grocery store. That pole was 16 feet northwest of the incinerator. Wires ran from the transformer to the back of the grocery store, which was 26 feet directly east of the transformer. The 2,500 volt line nearest the smokestack hung a distance of 6 feet 8 inches horizontally west of the smokestack, at an elevation of 32 feet 9 inches above ground.

Superintendent Watters, who had full authority to act on behalf of Magary, inspected the job site to gauge the work to be done and decide on the method by which it should be accomplished. He observed the electric wires and poles but either did not pay any attention to whether they were "electric" or, not considering them to be electric wires, thought they were telephone wires, having seen no warning signs on the poles. He considered it necessary to build a scaffold to get to the top of the smokestack to replace the spark arrester. He estimated that there was room for the scaffold to clear; that the distance between the scaffold and the closest wire would be "a couple of feet." He rented sectional metal (aluminum) scaffolding and directed Gillam to erect the scaffold on the west side of the smokestack—the side nearest the electric wires. Gillam and a co-worker built the scaffold. The sections were 5 x 7 feet. They were erected with the 5-foot width toward the wire. There was a conflict in the testimony whether the scaffold could readily have been placed on the south side of the smokestack, out of danger of contact with the charged wires. According to an affidavit filed on behalf of Union Electric this was possible. According to witnesses for Magary it was not because of a tree, or bracing on the smokestack, or an alley. It was pointed out that the alley was on the east side. There was evidence that the tree was not in the way. At Watters' direction Gillam attached a metal ladder on the west side of the scaffold nearest the charged wire. There was evidence from which it could be found that the ladder could as easily have been attached to either of the other sides of the scaffold.

The top of the completed scaffold was 33 feet and 4 inches above ground, 6 inches higher than the nearest charged wire. There was a clearance of 12 inches between the west side of the scaffold and the wire. While standing on the ladder, holding on with his hands, the back of Gillam's neck came in contact with the wire, causing 2,500 volts of electrical current to be diverted to his body. He sustained severe neck and back burns and his hands and parts of his arms were burned off.

Union Electric was aware of and had knowledge of the existence of the incinerator and smokestack when it built its line in 1943 and when it rebuilt its facilities in 1954. It knew or must be charged with knowledge that it owned and maintained a bare 2,500-volt electric wire at this location; that this wire was 6 feet 8 inches horizontally from the smokestack; that the wire would probably cause serious injury to any one who contacted it. Union Electric concedes in its brief that it "constructively knew that in the maintenance of the smokestack someone at some time might be on a scaffolding or similar structure adjacent to it"; that Union Electric might constructively be charged with knowledge of this particular job, and that there were precautionary measures Union Electric could have taken, such as warning Gillam or installing "Salisburys"—rubber hosing which serves as effective insulation for short periods of time.

Prior to the accident Union Electric was not informed by Magary or anyone acting for him, or otherwise actually notified, of the plan to erect this scaffold. Had it been notified Union Electric, in accordance with established policy, would have covered its lines with Salisburys. Union Electric's first knowledge came five hours after the accident, when Magary telephoned for assistance in order safely to remove the scaffolding. Union Electric then sent a

line crew to the scene and covered the wires with Salisburys to enable the work to be finished and the scaffolding removed.

Gillam recalls having been at the site the day before the accident, but does not remember seeing wires or poles, and recalls nothing on the date of the accident except that he picked up his co-worker early in the morning. He remembers that he was to do this job, but does not recall Watters' instructions or how in fact he did it.

The negligence with which Gillam charged Union Electric was fourfold: maintenance of uninsulated transmission wires; failure to provide any shield or guard at or near the wires so as to prevent contact with persons working in close proximity; failure to warn plaintiff of the presence and location of the wires and that they were uninsulated; causing and permitting uninsulated and unguarded wires to be and remain in close proximity to the smokestack when it knew, actually or constructively, that in the care and maintenance of the smokestack workmen would be in close proximity to the wires.

The original third-party petition attributed Gillam's injuries to the "gross, active and primary negligence" of Watters, acting as the authorized superintendent for Magary, in instructing and directing Gillam to erect the scaffold and ladder on the west side of the smokestack, adjacent to the 2,500-volt wire, with knowledge, actual or constructive, that Gillam would probably come in contact with the wire and sustain injuries. Magary was charged with Watters' negligence, as principal. Union Electric denied its own negligence but alleged that if it should be held liable to Gillam its negligence was passive and secondary and that third-party defendants would be liable over to Union Electric for the amount of such recovery.

Following the settlement and dismissal of Gillam's suit Union Electric filed its first amended third-party petition, realleging the same preliminary facts, adding the facts relating to the agreement between Union Electric and Gillam to settle his claim for $100,000, which was alleged to be a reasonable settlement, and the dismissal of Gillam's claim. Three additional charges of "gross, active and primary" negligence were made against third-party defendants: failure to provide Gillam with a safe place to work, failure to notify Union Electric of the plan to do work in the location of the transmission line, and failure to warn and advise Gillam that they had taken no action to make his work area safe. Union Electric alleged that it had only constructive knowledge of the possibility of work on or near the smokestack and "is chargeable merely with inactive, passive and secondary negligence," which it stated either existed in fact or was a legally submissible issue. Five reasons were alleged to justify Union Electric's failure to call upon Magary or Watters to defend the Gillam claim against Union Electric. Union Electric prayed for indemnity in the sum of $100,000.

We have jurisdiction of this appeal because the amount in dispute is $100,000.

Union Electric claims the right to indemnity under several different theories which have been applied by various authorities.

First, it relies upon the rule allowing indemnity against a party guilty of active and primary negligence in favor of one whose negligence is passive and secondary.[1] It claims that Watters and Magary created a dangerous condition by active negligence amounting to reckless misconduct, whereas its own negligence was passive, based upon constructive (not actual) knowledge of the dangerous condition.

Second, it advances the rule formulated in § 95 of the Restatement of the Law of Restitution: "Where a person has become liable with another for harm caused to a third person because of his negligent fail-

---

1. See Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., Mo.Sup., 338 S.W.2d 1; Woods v. Juvenile Shoe Corp. of America, Mo.Sup., 361 S.W.2d 694.

ure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." [2] It claims that the dangerous condition was caused by the misconduct of Watters and Magary and that Union Electric, having constructive knowledge of the situation, is liable only for failing to make it safe and is entitled to indemnity under this rule.

Third, it counts upon the rule of disproportionate duties,[3] under which indemnity is said to be allowable to one whose duty of care owed and violated approaches the absolute, against one who violated only a duty to exercise ordinary care. It claims it was obliged to exercise the highest degree of care; that Magary and Watters owed Gillam only the duty to exercise ordinary care, and since this theory requires indemnity from those who fail to live up to the lesser standards of care, third-party defendants must indemnify Union Electric. The applicability of this test was expressly negatived in State ex rel. Siegel v. McLaughlin, Mo.App., 315 S.W.2d 499, l. c. 508 [8], in cases where two tort-feasors "both have breached substantially equal duties owed the injured person, and have concurrently and jointly committed negligent acts of the some general character."

■ Fourth, it proposes the "last clear chance" theory of indemnity stated in § 97 of the Restatement of the Law of Restitution: "A person whose negligent conduct combined with the reckless or intentionally wrongful conduct of another has resulted in injury for which both have become liable in tort to a third person is entitled to indemnity from the other for expenditures properly made in the discharge of such liability, if the other knew of the peril and could have averted the harm at a time when the negligent tortfeasor could not have done so." It says that Gillam was injured through Magary's and Watters' reckless and shocking negligence; that third-party defendants knew of Gillam's peril and could have prevented harm to him at a time when Union Electric could not have done so. The principle that the joint tort-feasor who had the last clear chance to avoid the casualty should indemnify the other has never been followed in this state, Johnson v. California Spray-Chemical Co., Mo.Sup., 362 S.W.2d 630, 635, and was expressly rejected in State ex rel. Siegel v. McLaughlin, supra.

■ The case before us is a claim for indemnity in toto, not for contribution merely. Third-party plaintiff and third-party defendants are nonrelated, i. e., there was no antecedent contractual or other special legal relationship between them. This is a claim for indemnity for a liability arising in tort.

In the majority of the Missouri cases permitting recovery of indemnity for a liability arising in tort the allowance has been made " 'in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer * * *,' " McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., supra, Mo.Sup., 323 S.W.2d, l. c. 793, "or in favor of one who has only a secondary duty as contrasted with that of the original and primary wrongdoer." Crouch v. Tourtelot, Mo.Sup. (en banc, 1961), 350 S.W.2d 799, 806 [10]. In the Crouch case the Court quoted with approval this language from Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 371, 24 A.L.R.2d 319, also approved in State ex

---

2. See McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo.Sup., 323 S.W.2d 788; Barb v. Farmers Insurance Exchange, Mo.Sup., 281 S.W.2d 297.

3. See Indemnity between Negligent Tortfeasors: A Proposed Rationale, by E. Eugene Davis, 37 Iowa Law Review 517, at p. 546, et seq.

rel. Siegel v. McLaughlin, supra, Mo.App., 315 S.W.2d, l. c. 507: "In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other." See General Principles of Recovery in Non-Contractual Indemnification, Comment, Missouri Law Review, (Spring 1963), Vol. 28, p. 308.

With these principles in mind we are firmly of the opinion that the first amended third-party petition does not state a claim upon which relief may be granted; that Union Electric is not entitled to indemnity against third-party defendants on any of the suggested theories, and that the circuit court properly sustained the motions for summary judgment and properly entered final judgment for third-party defendants, for the reason that Union Electric and Magary, through his superintendent Watters, were joint tort-feasors in pari delicto, all guilty of active, primary, concurrent negligence.

The pleadings and exhibits upon which this matter is submitted by agreement of the parties plainly reveal that the electric company built, operated and maintained a highly charged, uninsulated and potentially dangerous transmission line in close and dangerous proximity to a smokestack which it knew or should have known would require maintenance, in the course of which there was a reasonable and probable likelihood that workers on scaffolding would be injured by contact with the transmission line. The detailed facts make a case of active, continuing, primary negligence against Union Electric, which concedes that Gillam

had a "submissible case of primary negligence" against it. Union Electric suggests that its amended third-party petition did not incorporate by reference or refer to Gillam's initial or amended petitions, but as this matter is submitted Union Electric cannot escape and we may not ignore the charges of active, primary and specific negligence directed against it in Gillam's original and amended petitions. Crouch v. Tourtelot, supra, Mo.Sup., 350 S.W.2d, l. c. 804. Those charges must be considered in determining the nature and character of Union Electric's negligence. Johnson v. California Spray-Chemical Co., Mo.Sup., 362 S.W.2d 630, 633; State ex rel. Siegel v. McLaughlin, supra, Mo.App., 315 S.W.2d, l. c. 503. Gillam's petitions underlie the claim of indemnity.[4] They state a case of active, primary negligence against Union Electric and not a case of inactive, passive, constructive or secondary negligence, as claimed. Union Electric's liability to Gillam is the consequence of its own active, primary negligence. Union Electric may not ignore its own participation in the chain of events leading to this casualty and cast the entire burden upon Magary and Watters under the claim of passivity and secondary liability. Crouch v. Tourtelot, supra, Mo.Sup., 350 S.W.2d, l. c. 808.

Union Electric's liability to Gillam does not arise by imputation of law out of some legal relationship or antecedent contract between Union Electric and Magary, because there was no such relationship between the parties.

Union Electric counts heavily upon Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., supra, as a case closely in point, and urges that the instant case is ruled by Payway; that the dangerous condition which resulted in Gillam's injury was caused by the misconduct of Magary and Watters and that Union Electric, having constructive knowledge of the situation, is liable only

---

4. Under the third party procedure adopted by Union Electric it sought recovery under § 507.080, subd. 1., V.A.M.S., "for all * * * of the plaintiff's [Gillam's] claim against [it]."

for failing to make it safe. The instant case is to be distinguished from Payway on the same grounds and for the same reasons given in Crouch v. Tourtelot, supra, Mo.Sup., 350 S.W.2d, 1. c. 806, 807 [11], namely, that Union Electric's negligence was active, and that Union Electric was charged with several specifications of negligence, infra, all of which involve independent action on its part and not merely "*a failure to discover and correct* the condition created by" the erection of the scaffold and ladder.

■ Union Electric's active and primary negligence was not the sole negligence contributing to Gillam's injury. Its negligence was joint and concurrent with that of Magary and Watters; it combined with the negligence of the latter to cause the injury, and as such was one of the direct and proximate causes of the injury. Magary's act of negligence, through Watters, would have been harmless but for Union Electric's negligence. Union Electric negligently provided the highly charged, dangerous and deadly wire at a place where a workman might be expected to go. Magary and Watters negligently sent a workman to that place under circumstances in which contact with the wire was a probability. The negligence of Magary and Watters was active and primary. Union Electric created a dangerous condition, and Magary and Watters joined in its act "by making the danger effective as to plaintiff." Crouch v. Tourtelot, supra, Mo. Sup., 350 S.W.2d, 1. c. 808. Union Electric and Magary, through Watters, "both participated, at the same instant, in the single act which caused the injury." Hickman v. Union Electric Light & Power Co., Mo. Sup., 226 S.W. 570, 574. The negligence of each constituted an efficient cause without which the injury would not have occurred. Joint tort-feasors guilty of concurrent negligence, Union Electric and Magary and Watters acted in pari delicto. Where joint tort-feasors are in pari delicto neither is entitled to indemnity from the other. Johnson v. California Spray-Chemical Co., Mo.Sup., 362 S.W.2d 630, 633, [2].

Judgment is affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM: The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.