Leon PIERCE, (Plaintiff),

v.

OZARK BORDER ELECTRIC COOPERATIVE, a Corporation, (Defendant and Third-Party Plaintiff), Appellant,

v.

J. W. GITHENS and E. E. Githens, d/b/a J. W. Githens Company, (Third-Party Defendants), Respondents.

No. 49717.

Supreme Court of Missouri,

Division No. 1.

May 11, 1964.

See also 348 S.W.2d 586.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, Wangelin & Friedewald, Poplar Bluff, for appellant.

Clarence A. Powell, Dexter, Blanton & Blanton, Sikeston, for third-party defendants-respondents.

HOUSER, Commissioner.

This is an appeal from an order dismissing a third-party petition for indemnity, deemed a final judgment for the purposes of appeal. See Sup.Ct. Rule 82.06, V.A.M.R.

Third-party plaintiff Ozark Border Electric Cooperative, a corporation, hereinafter "Ozark," filed a third-party petition against J. W. Githens and E. E. Githens, doing business as J. W. Githens Company, hereinafter "contractors," praying for judgment against contractors for all damages and costs that might be adjudged against it in favor of plaintiff Leon Pierce in his negligence suit against Ozark.

Pierce's petition against Ozark sought damages for personal injuries sustained by Pierce, when as an employee of contractors, engaged in the building of a bridge, Pierce received a high charge of electricity as he grasped a bucket being lowered by a crane operated by contractors, the crane having come in contact with Ozark's overhead uninsulated electric power

line. Pierce, alleging serious and permanent personal injuries and the loss of a member, prayed for $150,000 damages.

Ozark's third-party petition charged contractors with active, primary, positive negligence and alleged that its own negligence, if any, was passive, secondary and remote.

Third-party defendant contractors filed a motion to dismiss the third-party petition on the ground that it failed to state a cause of action. The circuit court sustained the motion and dismissed the third-party petition. Ozark has appealed from the order of dismissal.

After this appeal was taken Pierce and Ozark compromised and settled their differences. Ozark paid $34,500 to Pierce, who dismissed his cause of action with prejudice. After Ozark's appeal to this court was perfected Ozark filed here a verified motion to add to the record the fact that an amount in excess of $15,000 is involved on this appeal by reason of the settlement.

 We have jurisdiction. Appellate jurisdiction over the subject matter is determined upon the record at the time the appeal is granted and "nothing subsequently occurring will defeat or confer jurisdiction on this court," Hunter v. Hunter, 355 Mo. 599, 197 S.W.2d 299, 300,[1] so we look to the record as of August 17, 1962, which shows that plaintiff was then making a bona fide claim to $150,000 damages in his action against Ozark. This fixes the amount in dispute for the purpose of our jurisdiction. Crouch v. Tourtelot, Mo.Sup., 350 S.W.2d 799, 803 [5].

Plaintiff Pierce alleged these facts: Contractors were engaged in the construction of a concrete bridge over a ditch on County Route BB in Ripley County. Ozark's high voltage electric transmission lines crossed the road at the place where the bridge was being constructed. The wires were so placed in position that persons working on the highway and on machinery re-

quired in the construction work would be likely to come in contact with the wires. Contractors requested Ozark to move the wires or de-energize them at the point in question so as to provide a safe place for plaintiff and other employees to work. Ozark was aware that the bridge construction was taking place and that heavy construction equipment including draglines and cranes were being used in the construction work at that point, and that the equipment would likely come in contact with the wires, but Ozark failed, neglected and refused to move the wires or de-energize the lines. The lines were uninsulated and no type or kind of shield or guard was provided at or near the wires to prevent persons from coming in contact with them. Employees of contractors were operating a crane or dragline on the highway at said point, transferring liquid cement from a mixer to the deck of the bridge upon which plaintiff was standing. The crane came in contact with the high voltage transmission line and thereby transferred a deadly current of electricity from the crane to plaintiff, who in the course of his employment, grasped the crane's bucket preparatory to unloading it. As a result plaintiff sustained very severe injuries.

Pierce charged Ozark with negligence in the following particulars: maintaining the wires in an uninsulated condition; failure to provide any type or kind of shield or guard at or near the wires so as to prevent contact with persons working in close proximity; failure to warn plaintiff of the presence and location of the wires and that they were uninsulated; failure to maintain the wires at a height above the ground that was safe and adequate to prevent contact therewith by persons working in close proximity.

Ozark filed a general denial and a plea of contributory negligence.

Ozark's third-party petition as amended charged that at the request of contractors

---

1. A rule subject to the qualifications referred to in Feste v. Newman, Mo.Sup., 368 S.W.2d 713, 715.

a representative of Ozark visited the site, and made recommendations as a result of which, without request by any public regulatory body or entity, Ozark at its own cost raised its wires approximately ten feet over the construction area and elevated them to a height in excess of the requirements of the National Safety Code; that Pierce's injuries were the result of the "primary and active negligence" of contractors, as follows: operation of the crane in unusually close proximity to the transmission line; failure to warn plaintiff of the danger of working near the transmission line; failure to warn plaintiff of the proximity of the boom and cable to the transmission line when the crane was moving the concrete; placing the crane in a position near the transmission line; failure to notify Ozark of their intention to operate a crane in close proximity to the transmission line; failure to notify Ozark of their intention to pour concrete at that site on the day of the accident; failure to request Ozark to de-energize the wires; failure to request Ozark to place insulating materials over the energized wires; failure to request Ozark to have an employee present at the time and place. Ozark further alleged that any negligence on its part was passive, secondary and remote, and that if it is held liable to plaintiff by reason of the active negligence of contractors, Ozark is entitled to be fully indemnified and held harmless by con- tractors. Ozark referred to and attached to its amended third-party petition Pierce's second amended petition for damages.

In answer to a request for admissions Ozark conceded that its line crosses the highway at the point in question, and that it knew generally that a culvert was to be constructed on Route BB in Ripley County, but denied that it knew when the culvert was to be constructed or on what day the concrete was to be poured; denied that it was advised that concrete would be poured that day; denied having been requested to de-energize its lines that day or at any other time at that site; denied knowledge that Pierce was working at the site that day; denied that it was requested to have an employee there that day; and claimed that it voluntarily relocated its wires by raising its primary wires to a height above the code requirements and in accordance with accepted engineering standards for the location of primary wire crossings of farm-to-market roads, by substituting a 45-foot pole for a 35-foot pole, thereby raising the line more than ten feet.

Ozark claims on this appeal that its third-party petition stated a cause of action against contractors for indemnity by alleging a situation in which the negligence of third-party defendants was the active and primary cause of the injuries sustained by plaintiff in that contractors, with full notice of the wires over their job site used a crane with a high boom in close proximity to the wires, and that the negligence of Ozark, if any, was secondary and remote. In support of its position Ozark cites Kansas City Southern Ry. Co. v. Payway Feed Mills, Inc., Mo.Sup., 338 S.W.2d 1; Barb v. Farmers Insurance Exchange, Mo.Sup., 281 S.W.2d 297; City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120; and Busch & Latta Paint Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614.

This claim is for indemnity to the full extent of any liability to be imposed upon Ozark, and not a claim for contribution.

In the majority of cases in this state where indemnity has been allowed there existed a special relationship between indemnitor and indemnitee, Union Electric Co. v. Magary, Mo.Sup., 373 S.W.2d 16, 20, such as a contractual or quasi-contractual relationship, or the liability arose from "some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." State ex rel. Siegel v. Mc-Laughlin, Mo.App., 315 S.W.2d 499, 507.

▮ We find no such special relationship, rule or situation in this case to support Ozark's claim for indemnity. Ozark sees

a contractual or quasi-contractual relationship between Ozark and contractors "in that the pleadings and the evidence in support thereof will show that at the request of Joy Githens [Ozark], without charge to [contractors] or compensation from any source, raised its wires approximately ten feet higher than they had been over the area where the bridge was to be constructed * * *," but this is contrary to the allegation in its third-party petition as amended that *Ozark* (not contractors) recommended the raising of the wires. Even if this was a typographical error and we should take it as an established fact that the wires were raised at contractors' request, such a gratuitous act on Ozark's part would not result in a contractual or quasi-contractual relationship between the parties. We notice in this connection that at the hearing of the motion to dismiss the third-party petition one of Ozark's counsel admitted in open court that no contractual relationship existed.

■ The legal principles involved in this factual *milieu* are the same principles recently reannounced and applied in a situation not distinguishable from the instant case on the facts. Union Electric Co. v. Magary, Mo.Sup., 373 S.W.2d 16. Contractors' motion to dismiss in the instant case was properly sustained for the same reasons the contractor's motion for summary judgment was held in that case to have properly been sustained. We look at the charges of negligence alleged in Pierce's amended petition, Union Electric Co. v. Magary, supra, 373 S.W.2d, l. c. 21; Johnson v. California Spray-Chemical Co., Mo.Sup., 362 S.W.2d 630, 633; Crouch v. Tourtelot, Mo.Sup., 350 S.W.2d 799, l. c. 804; State ex rel. Siegel v. McLaughlin, supra, 315 S.W.2d, l. c. 503, to determine the nature and character of Ozark's negligence. Pierce charged Ozark with active, primary negligence, and not inactive, secondary, or remote negligence, as Ozark claims. The charge against Ozark is that of negligently maintaining a highly charged, uninsulated and potentially dangerous power line at a place where it knew or should have known that construction work was to be done, in the course of which work there was a reasonable and probable likelihood that heavy construction equipment would be used which would likely come in contact with the wires, with consequent likelihood of injury to construction workers. Likewise, a case of active and primary negligence was asserted against contractors, in operating the crane in close proximity to and contacting the wires and failing to warn plaintiff of the danger. Ozark created the dangerous condition. ' Contractors joined in Ozark's negligence by making the danger effective as to plaintiff. They "both participated, at the same instant, in the single act which caused the injury." Hickman v. Union Electric Light & Power Co., Mo.Sup., 226 S.W. 570, 574; Union Electric Co. v. Magary, supra, 373 S.W.2d, l. c. 22. As in Magary, the negligence of each "constituted an efficient cause without which the injury would not have occurred." Id.

This is a plain case of concurrent or joint tort-feasors, having no relation to each other, each owing the same duty to the injured party, both involved in the accident which caused plaintiff's injuries, both under a common liability and not a primary and secondary one. Where joint tort-feasors are in pari delicto neither is entitled to indemnity from the other. Johnson v. California Spray-Chemical Co., Mo.Sup., 362 S.W.2d 630, 633 [2]; Union Electric Co. v. Magary, supra, 373 S.W.2d, l. c. 22.

■ Ozark makes the further contention that the court erred in sustaining the motion to dismiss for the reason that once the third-party petition was filed the court had no discretion to dismiss it; that the third-party plaintiff thereafter had an absolute right to submit its case to the jury under § 507.080, V.A.M.S. In our view a circuit court has the power and the duty to consider a motion to dismiss a third-party petition on the ground that it does not state a cause of action or "claim upon which relief may be granted," the same as a motion to dismiss

any other kind of petition, and not only can but should dismiss such a petition if it is lacking in this respect.

These considerations being completely dispositive of this appeal, we need not consider other points raised by the parties.

The order and judgment of dismissal is affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.