**The WESTERN CASUALTY & SURETY COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**SHELL OIL COMPANY, a Corp., and John J. Steel, Defendants-Appellants.**

No. 32286.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied March 17, 1967.

Application to Transfer Denied May 8, 1967.

---

Evans & Dixon, Eugene K. Buckley, St. Louis, for defendants-appellants.

Lusser, Hughes & Lusser, Rene J. Lusser, Sr., St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This appeal involves a claim for non-contractual indemnity for liability arising in tort. Marilyn Boyer and Shirley Mae Guenther, teen-age girls, were injured when an explosion occurred in the ladies' rest room in a filling station in DeSoto, Missouri. The station was being operated by Cledis Lanham under a written lease from Shell Oil Company, which owned and had constructed it. The Boyer and Guenther girls each brought an action in the Circuit Court of the City of St. Louis in which Lanham and Shell were joined as defendants. Shell effected settlements of both suits and the actions against it were dismissed, leaving Lanham as the sole defendant. Subsequently plaintiff, Lanham's insurer, on the advice of its trial attorney, paid $6750 on behalf of Lanham in settlement of each of such suits. Relying on the subrogation clause in Lanham's policy, plaintiff then instituted this action against Shell and Steel, Shell's employee, to recover the $13,-500 it had paid on behalf of its insured in settlement of the Boyer and Guenther suits. The court, sitting without a jury, rendered judgment in favor of plaintiff and against both defendants in the sum of $13,500, and after their post-trial motions were overruled defendants appealed.

The evidence shows that the filling station in question was designed and constructed by Shell in 1950 on a lot fronting on Boyd Avenue, at its intersection with Main Street, in DeSoto, and faced to the south. The station building, one-story high, was erected on the extreme rear of the lot, against a pre-existing three-story building on the adjoining lot to the north. Three gasoline tanks were located underground and were filled through pipes terminating in a manhole about 12 feet to the east of the station building. To dispel fumes, four vent pipes led from the underground tanks to the northeast corner of the station building, adjacent to the wall of the neighboring three-story building, and extended vertically from the sidewalk on the east side of the station to a point about 18 inches or 2 feet above its roof. Two rest rooms, one for each sex, were located on the east side of the station, the ladies to the north, with the door closest to the north wall, next to the vent pipes.

Lanham had occupied the filling station as Shell's lessee from the time it was completed. The lease in effect at the time of the explosion provided, in brief, that the entire control and direction of the business and operations of the premises was vested in Lanham, with no right of control reserved in Shell, and stipulated that Lanham was not an agent or employee of Shell. The lease obligated Lanham to keep the premises in good order and repair but provided that Lanham could not make any attachments or additions to, or any alterations of, the building without Shell's prior written consent. Emil A. Stobbe, Shell's Division Engineer, in charge of the erection and maintenance of its filling stations, who had designed and supervised the construction of the station in question, testified that this reservation by Shell included the right to relocate the storage tanks and the vent pipes. For the purpose only of showing such right of control the plaintiff was permitted to introduce evidence that subsequent to the explosion Shell raised the vent pipes to a height above that of the adjoining three-story building. The lease also provided that Lanham should indemnify Shell against any and all claims and liability for injury of persons caused by or happening in connection with the premises or the condition, maintenance, possession or use thereof or the operations thereon. Defendant Shell does not urge that clause as a bar to plaintiff's action.

Between 8:30 and 9:00 P.M. on August 20, 1957, Steel, Shell's driver, drove its tank truck onto the east part of the station lot to deliver 2800 gallons of regular gasoline and 2000 gallons of ethyl ordered by Lanham. Steel attached one hose to the

filler pipe which led to the tank for regular gasoline and another to the pipe for the ethyl tank, and discharged through both hoses simultaneously. Most of the witnesses described the weather as warm and "muggy," with no wind blowing. About 9:00 P.M., while the gasoline was being unloaded, the Boyer and Guenther girls, walking home from downtown, stopped to use the ladies' rest room, as they had often done before. While the Guenther girl was using the facilities the Boyer girl struck a match to light her cigarette, and an explosion occurred, which injured them.

Basically, plaintiff's theory is that it is entitled to restitution from defendants under the doctrine of non-contractual or implied indemnity because the defendants were guilty of active and primary negligence towards the Boyer and Guenther girls, while Lanham was merely guilty of passive and secondary negligence. Such negligence on the part of defendants, it pleaded, consisted in the construction and location of the vent pipes in such close proximity to the adjoining building on the north, and at such a height, as to cause and permit dangerous gasoline fumes to accumulate in the ladies' rest room; in failing to warn Lanham of the dangerous condition thereby created, although Shell had superior knowledge of the safety factors required in the design, construction and maintenance of the station, and particularly the vent pipes; and in causing an unusual and large accumulation of gasoline vapors to be emitted from the vent pipes by simultaneously discharging both grades of gasoline into the storage tanks. Regarding Lanham's liability to the Boyer and Guenther girls plaintiff alleged that it was " * * * solely by imputation of law for the vicarious liability of said Cledis I. Lanham due to the sole and direct and proximate negligence of the defendants * * *" in the particulars just stated.

The court found that the negligence of defendants had been active or primary, and to have created the dangerous and hazardous condition which was the proximate cause of the explosion and the resultant injuries to the Boyer and Guenther girls; that the negligence of Lanham had been passive or secondary; and that as a result of defendant's active and primary negligence, Lanham, plaintiff's insured, was exposed to liability and compelled to pay $13,500 damages in settlement of the Boyer and Guenther lawsuits. Judgment, as mentioned, was rendered in favor of plaintiff for the sum stated.

As the court observed in Crouch v. Tourtelot, Mo., 350 S.W.2d 799, 804: "There is considerable divergence and some confusion in the authorities, generally, as to the circumstances under which indemnity may be required for a liability arising in tort. * * *" And as stated in Prosser on Torts, 2d Ed., 251, § 46, quoted with approval in McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W. 2d 788, 793: " * * * 'It is difficult to state any general rule or principle as to when indemnity will be allowed and when it will not.' * * *" Perhaps the statement of principles most frequently quoted with approval by our Missouri courts is that given in Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 371, 24 A.L.R.2d 319, where it was said:

" 'Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. In the case of *concurrent* or *joint* tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the

authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other.'"

Union Electric Co. v. M. D. Magary Const. Co., Mo., 373 S.W.2d 16, 21; Crouch v. Tourtelot, supra; State ex rel. Siegel v. McLaughlin, Mo.App., 315 S.W.2d 499, 507–508. While plaintiff refers to that statement of principles in its brief it leans heavily on the case of Kansas City Southern Ry Co. et. al. v. Payway Feed Mills, Mo., 338 S.W.2d 1, in which the decision was largely based on the rule given in Restatement of the Law of Restitution, § 95, p. 415, that:

"Where a person has became (sic) liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

Defendants do not take the position that one joint tort-feasor may never recover indemnity from another. In their brief they concede that our Missouri courts have recognized that the right to indemnity exists for liability arising in tort, but they emphasize that the right exists only in a "closely circumscribed" area embracing "a group of special situations and relationships." State ex rel. Siegel v. McLaughlin, supra, 315 S.W.2d l.c. 502. However, inasmuch as defendants do not contend that the claim in the instant case falls beyond the circumscribed area, or that it is not embraced within the group of special situations and relationships in which the right of indemnity has been held to exist, we note but need not discuss the various circumstances in which indemnity has been allowed[1] or denied[2] for a liability arising in tort. The scope of our review is accordingly restricted to the relatively narrow issues, three-fold in number, presented in defendants' brief; that the court erred in entering judgment for the plaintiff for the reason that plaintiff's petition fails to state a claim upon which relief can be granted; that the evidence showed that Lanham was guilty of independent, active and primary negligence towards the Boyer and Guenther girls, was in pari delicto with the defendants, and is therefore not entitled to indemnity from them; and that the evidence was insufficient to support the judgment.

Under their first point defendants do not assert that the plaintiff's petition, in and of itself, does not state a claim upon which relief can be granted. The argument they make is that plaintiff's petition must be judged in conjunction with the Boyer and Guenther petitions against Lanham; that in those petitions Lanham was charged with active, primary and concurring negligence, and to have been in pari delicto with defendants; that plaintiff in this case is conclusively bound by such charges; and that plaintiff is therefore not entitled to indemnity. In support of their argument

1. Allowed in City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120 (reversed on other grounds, 296 Mo. 150, 246 S.W. 175); Busch & Latta Paint Co. v. Woermann Constr. Co., 310 Mo. 419, 276 S.W. 614; State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481; Barb v. Farmers Ins. Exchange, Mo., 281 S.W.2d 297; McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W. 2d 788; Kansas City Southern Ry Co. et al. v. Payway Feed Mills, Inc., Mo., 338 S.W.2d 1.

2. Denied in Crouch v. Tourtelot, Mo., 350 S.W.2d 799; Johnson v. California Spray-Chemical Co., Mo., 362 S.W.2d 630; Union Electric Co. v. M. D. Magary Const. Co., Mo., 373 S.W.2d 16; Pierce v. Ozark Border Electric Co-op., Mo., 378 S.W.2d 504; Campbell v. Preston, Mo., 379 S.W. 2d 557; State ex rel. Siegel v. McLaughlin, Mo.App., 315 S.W.2d 499.

defendants cite Crouch v. Tourtelot, Mo., 350 S.W.2d 799; Union Electric Co. v. M. D. Magary Const. Co., Mo., 373 S.W.2d 16; Pierce v. Ozark Border Electric Co-op., Mo., 378 S.W.2d 504; Campbell v. Preston, Mo., 379 S.W.2d 557; Johnson v. California Spray-Chemical Co., Mo., 362 S.W.2d 630; State ex rel. Siegel v. McLaughlin, Mo. App., 315 S.W.2d 499.

■ Assuming the truth of the premise, that the Boyer and Guenther petitions charged Lanham with active, primary and constructive negligence, the decisive question is whether, under the circumstances as they exist in this case, Lanham and therefore plaintiff are conclusively bound by the allegations of negligence which were contained in the Boyer and Guenther petitions. A careful review of the decisions cited by the defendants reveals the significant differences which distinguish them from, and render them inapplicable to, the instant case. All of them involve either a situation in which one of two defendants, both of whom were charged with active and primary negligence by the injured plaintiff, endeavored to state a claim for indemnity in a cross-bill against his co-defendant; or a situation in which a defendant, charged with active and primary negligence by the injured plaintiff, endeavored to state a claim for such relief in a third-party petition against a third-party defendant. More importantly, in all of the cases cited, except Union Electric Co. v. M. D. Magary Const. Co., supra, the entire case was in the pleading stage and the plaintiff's petition was pending and undisposed of. In such situations the court, in determining whether a claim for indemnity could be maintained, was required to and did judge the defendants' cross-claim or third-party petition in conjunction with the underlying petition of the plaintiff, and was compelled to accept and regard as true the allegations of negligence charged in the plaintiff's petition. For as was stated in Campbell v. Preston, Mo., 379 S.W.2d 557, 560: "In determining the sufficiency of a cross-claim filed by a defendant in a tort action, the court must assume that the facts stated in the plaintiff's petition and the defendant's cross-claim are true. * * *" And since the purported indemnitee was charged with active and primary negligence in the plaintiff's petition, and to be in pari delicto with the purported indemnitor, it was held in those cases that a cross-claim or third-party petition could not be maintained. Union Electric Co. v. M. D. Magary Const. Co., differs from the other cases cited only in that there, after filing its third-party petition against Magary, the electric company settled with the injured plaintiff. In testing whether its subsequently amended third-party petition could be maintained, the court held that the undisputed facts, particularly that of the erection and maintenance of the uninsulated wire with which plaintiff came in contact, showed that as a matter of law Union Electric had been guilty of active and primary negligence towards the plaintiff.

■ In the case at bar the Boyer and Guenther petitions are no longer pending, having been dismissed after the settlement made by Lanham. Hence the determination of whether Lanham was guilty of active and primary negligence towards the girls, or of only secondary and passive negligence, is not predicated on the pleadings, nor is Lanham bound by the allegations in the girls' petitions. A brief example will demonstrate the error of defendants' argument to the contrary. In both the Boyer and Guenther petitions Lanham, as well as Shell and Steel, was alleged to have "caused" the gasoline fumes to collect in the rest room. Yet there is not a shred of evidence in the record to support such a charge. If the Boyer and Guenther actions had been tried and resulted in a judgment against Lanham, then in this subsequent suit against the defendants for indemnity he would be bound by the negligence of which he was found guilty in the girls' suits. City of Springfield v. Clement, 205 Mo.App. 114, 225 S.W. 120 (reversed on other grounds, 296 Mo. 150, 246 S.W. 175); Joshmer v. Fred Weber Contractors,

Inc., Mo.App., 294 S.W.2d 576. But where, as here, the injured party's claim was settled and there has been no final determination of the nature of the purported indemnitee's negligence towards the injured party, then the character of such negligence becomes an issue of fact to be adjudicated in the indemnitee's suit against the alleged indemnitor. And as an essential element of his case it is incumbent upon the indemnitee to plead and prove that his negligence towards the injured party was only secondary and passive, and that of the indemnitor active and primary. A parallel to the present situation is found, not in the cases cited by defendants, but in Kansas City Southern Ry Co. et al. v. Payway Feed Mills, Inc., Mo., 338 S.W.2d 1, where Price, an employee of the railway companies, sustained injuries as a result of the insufficient clearance between Payway's movable dock and a box car on which Price was riding. The plaintiffs paid Price $15,000 in settlement of his claim under the Federal Employers' Liability Act and then instituted an action for indemnity in that sum against Payway. Plaintiffs submitted their case by an instruction which required the jury to find, among other facts, that their negligence had been passive and secondary, and that of Payway active and primary. Defendant, on the other hand, submitted a verdict directing instruction predicating a verdict for it upon a finding that the railway companies failed to use ordinary care to inspect the clearance and were thereby actively negligent. On appeal Payway contended that its motion for a directed verdict should have been sustained because the railway companies were guilty of active negligence as a matter of law, and that the court erred in submitting the issue of plaintiffs' negligence to the jury. In overruling those contentions the court said (338 S.W.2d 7):

" * * * It was necessary for the jury to find that plaintiffs were guilty of negligence. Otherwise, plaintiffs would not have been warranted in making a settlement with Price. But the jury was further required to find that such negligence was passive and that defendant was guilty of active negligence. Passive negligence will not bar recovery of indemnity from a joint tort-feasor whose active negligence created the dangerous condition."

and further (l.c. 9):

"The second contention of error in regard to Instruction No. 1 is that the instruction was erroneous in submitting the issue as to whether plaintiffs were guilty of passive negligence when the evidence that plaintiffs moved the cars, coupled with failure to keep a lookout, constituted active negligence as a matter of law. This is essentially the same contention as was advanced by defendant in support of its contention that its motion for a directed verdict should have been sustained. Our discussion of that point is sufficient to indicate our view that the present contention is without merit."

Here the nature of the respective negligence of the plaintiff and the defendants were disputed issues of fact which were tried and submitted to the court; and the court, as stated, found those issues in favor of the plaintiff. Under the authority of the Kansas City Southern case we hold that defendants' claim that plaintiff's petition did not state a claim upon which relief could be granted is without merit.

 In cross-examination Lanham stated that "several times" prior to August 20, 1957 he had noticed gas fumes accumulating "on the outside, around close to where the rest-rooms are"; that " * * * if there is an odor they are always stronger when they are putting gas in the tanks and the vent pipes are going"; and that depending upon the weather, and particularly the absence of a wind, the odor remained a very short time after they were through loading gas, about five minutes. Defendants argue that this testimony shows that Lanham was guilty of active and

primary negligence in failing to warn Shell, lock the doors to the rest rooms while gasoline was being unloaded into the storage tanks, or post a "No Smoking" sign in the ladies' rest room. In support of their argument defendants cite the latter part of § 95 of the Restatement, supra, to the effect that a payor who has not created the dangerous condition is entitled to indemnity " * * * unless after discovery of the danger, he acquiesced in the continuation of the condition." In the Comment under that section, after a reference to various factual situations, it is said:

"In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable. On the other hand, if the condition was such as to create a grave risk of serious harm to third persons or their property and the payor was or, from his knowledge of the facts, should have been aware that such a risk existed, his failure to make the condition safe is reckless and he is not entitled to restitution (see § 88(b))."

And in the Comment under Section 88 the authors lay down the rule that " * * * It is a matter for judicial discretion to determine whether an act is so seriously wrongful as to bar restitution under the particular circumstances. * * * " In the exercise of its judicial discretion the trial court found that Lanham's negligence was only passive and secondary, and such as not to bar him from restitution. There can be no doubt of the character of his negligence, for the failure to warn or remedy has been held under comparable circumstances to be secondary or passive negligence. City of Springfield v. Clement, supra; Busch & Latta Painting Co. v. Woermann Construction Co., supra; Barb v. Farmers Insurance Exchange, supra; Kansas City Southern Ry. Co. et al. v. Payway Feed Mills, Inc., supra. Nor can it reasonably be said, we believe, that Lanham's knowledge, actual or constructive, was such as to amount to that acquiescence which will bar restitution. Defendant Shell had constructed the station with the vent pipes at their height and location adjacent to the adjoining three-story building, and had reserved the right to change the existing conditions. Shell was aware that fumes were noticeable in the area of the pipes when gasoline was being delivered, for its employee and co-defendant, Steel, testified that he had previously reported that fact to his immediate supervisor. Furthermore, according to plaintiff's expert witness, the simultaneous discharge of gasoline into the two storage tanks had the effect of doubling the amount of fumes emitted from the vent pipes into the restricted area and of producing a very rich mixture. The record is devoid of any evidence that Lanham (who was not present) or his employees were aware that defendants were discharging into the two tanks simultaneously. And while Lanham's testimony indicates that he was aware that at times fumes were noticeable on the outside of the station, in the area of the rest rooms, when gasoline was being unloaded, it falls far short of showing any actual or constructive knowledge on his part of the entrance and accumulation of such fumes in the rest room, much less that of any concentration therein so great as to be dangerous and explosive.

■ Defendants' final point, that the evidence was insufficient to sustain the judgment, hinges on the following question propounded and answer given during the direct examination of plaintiff's expert witness, Dr. Lawrence E. Stout, a licensed chemical engineer and professor, and former head of the Department of Chemical Engineering and Dean of the School of Engineering of Washington University:

"Q And from what we see on Plaintiff's Exhibit 3, and from Number 1 and 2, would the vent pipes at the elevation they were, and bearing in mind the amount of vapors spread in that area, Doctor, can you state

with a reasonable degree of certainty whether these vapors could have been the cause of the explosion?

"A In my opinion, it had to be a vapor that had recently been released in this particular area and driven to the ground, or had fallen to the ground as a result of greater density."

Defendants assert that such testimony does not constitute substantial evidence of a causal connection between the location and height of the vent pipes and the explosion because the word "could" rather than "did" was used in the question; and because in his answer Dr. Stout did not restrict himself to vapors from the vents but talked about vapors generally. Whatever infirmities were inherent in the question, Dr. Stout's answer was direct and specific, and expressed more than a mere possibility. The only reasonable construction of his answer is that the "it" referred to the cause of the explosion; and the latter part established that in his opinion the vapor had " * * * fallen to the ground as a result of greater density." The only source from which gasoline vapors of great density could have fallen to the ground, according to the evidence, was from the vent pipes. Furthermore, when Dr. Stout's testimony is considered as a whole, rather than one question and answer taken out of context, it amply supports plaintiff's claim that the explosion occurred when a concentration of gasoline fumes in the rest room was ignited by the match struck by Miss Guenther, and that the concentration resulted from a combination of circumstances, including the inadequate height of the vent pipes; their location adjacent to the adjoining three-story building; the tendency of such fumes to fall; the restricted area for the dispersal of such fumes into the atmosphere, because of the location of the pipes in the 90° angle formed by the station and the neighboring building; the discharge of gasoline into both underground tanks simultaneously rather than consecutively, which doubled the amount of vapor emitted from the vent pipes and produced a very rich mixture; the absence of any wind and the "muggy" atmosphere; and the opening of the door into the rest room. We are of the opinion that such evidence was substantial and more than sufficient to support the judgment.

The judgment is therefore affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.